PRICE, Judge.
This is an appeal from a judgment awarding damages for personal injuries and related expenses to the plaintiff in a tort action arising out of an intersectional collision. The issues projected on this appeal concern the correctness of the trial court’s determination of negligence, whether plaintiff’s injuries are causally related to the accident, and the adequacy or exces-siveness of the amount awarded by the trial judge.
Jesse J. Smithers filed this action under the direct action statute against State Farm Mutual Automobile Insurance Company, the liability insurer of a vehicle owned and being driven by Rex L. Livingston. Smithers contends that at about 9:30 a. m. on June 25, 1970 he was driving his 1960 Chevrolet pickup truck easterly on Southern Avenue in the City of Shreveport, and as he entered the intersection with Fairfield Avenue his truck was struck on the left front by the automobile being driven by Livingston in a southerly direction on Fairfield.
Plaintiff alleges the accident resulted from the negligence of Livingston in failing to stop for a red traffic light; failing to maintain proper control over his vehicle; not maintaining a proper lookout; and driving at an excessive speed.
State Farm contends in answer to plaintiff’s petition that their assured, Livingston, entered the intersection on a green light which changed to caution just after his entry, and that the plaintiff drove his truck into the intersection without allowing Livingston an opportunity to clear the intersection. Defendant thus denies negligence on the part of Livingston and alleges the collision resulted from the negligence of Smithers in not maintaining a proper lookout and entering the intersection without allowing the Livingston vehicle ample opportunity to clear same. Plaintiff is further accused of negligence in entering into the intersection at a time his view was blocked by a truck parked to his left.
These acts of negligence defendant contends are the sole, or at least a contributing proximate cause of the accident, barring plaintiff’s recovery.
The trial judge resolved the question of fault in plaintiff’s favor and we find no error in his conclusion.
To the west of the intersection Southern is a four-lane thoroughfare with two lanes for eastbound traffic. It intersects Fair-field at an angle. Fairfield, north of the intersection, is also a four-lane thoroughfare with the two southbound lanes merging into a single lane immediately to the south of the intersection. Traffic is controlled by electric control signals.
The evidence shows that just prior to the collision plaintiff was stopped in the *435 outside curb lane of Southern waiting for the red traffic signal facing him to change. A large flat-bed truck was stopped to his left in the inside lane also awaiting the signal light. Plaintiff testified that after the light changed to green he accelerated in a normal manner and after moving a short distance into the intersection he glanced to his left and noticed a car coming from that direction about to collide with him. He applied brakes and stopped but was unable to prevent the other car from striking the left front of his truck. He could not see the other vehicle until it was some six feet from him because of the large truck to his left.
The driver of the truck and a passenger therein each testified on behalf of plaintiff. Their testimony is substantially corroborative of plaintiff’s version of the accident. This vehicle had also started to move into the intersection when the driver noticed the Livingston car was coming into the intersection to the left and was forced to stop to avoid a collision.
Although Livingston’s testimony is to the contrary, we find the preponderance of the evidence establishes that he entered the intersection on a red light in violation of the traffic control signal. Nor do we find any negligence on the part of Smithers in proceeding into the intersection under the circumstances presented herein. The truck to his left started to move with the change of the light to green, indicating to plaintiff the intersection was clear to his left. He proceeded at a reasonable rate of speed from a stopped position on a favorable green light. He could assume vehicles proceeding on Fair-field would obey the control light commanding them to stop and yield the right-of-way to traffic flowing with the favorable light on Southern. The evidence further indicates he promptly applied brakes and made every attempt to avoid the collision upon discovering the vehicle moving into his path. We therefore affirm the trial judge’s conclusion that Livingston’s negligence was the sole proximate cause of this accident.
As a result of the accident plaintiff contends he suffered a sprain of the cervical area and trapezius muscles and the herniation of an intervertebral disc in his lumbar spine. There is no question that the accident caused plaintiff to sustain a moderate sprain affecting his neck and right arm which fully recovered with medical treatment.
The most serious question presented on this appeal concerns the causal relationship of the accident to the lumbar back injury for which plaintiff claims substantial damages as it has necessitated plaintiff submit to two operative procedures for correction and has resulted in a partial permanent disability.
Although the trial judge did not give written reasons for judgment, he apparently found the herniation of the disc in plaintiff’s back was caused by the accident as a total of $27,500 was awarded plaintiff for damages arising out of the accident.
Defendant contends the evidence does not prove to the degree of legal certainty required under the jurisprudence that there is a causal connection between the accident and plaintiff’s lumbar back injury because plaintiff made no complaints of back or leg pain to his treating physicians until approximately four weeks after the accident. Defendant further contends the testimony of plaintiff’s medical witnesses does not establish to a medical certainty that a causal relationship existed, and it is improbable that plaintiff could have sustained sufficient trauma from the slight degree of impact involved in this collision to have caused a herniated disc.
The evidence in the record shows that the date of the accident plaintiff sought treatment during office hours from Dr. D. R. Martin, a general practitioner, for pain in the cervical area. He was given pain relieving medication and instructed to rest for the remainder of the day. Plaintiff, *436 who worked an evening shift at the AMF Beaird plant, reported to work in the late afternoon. He was unable to work and after reporting to first aid at the plant, he sought treatment at the emergency room if Bossier General Hospital where he was seen by Dr. W. W. Fox, an orthopedic surgeon. He was hospitalized that night and treated for a sprain of the cervical area and the trapezius muscles by traction and physical therapy. Plaintiff was discharged from the hospital on July 2nd. Although he visited Dr. Fox on July 7, the first complaint of back pain radiating into the left leg was on July 27, according to the notations made by Dr. Fox in plaintiff’s medical records.
Plaintiff next visited Dr. Fox on November 3, 1970, again complaining of back and leg pains. During the eight week interim from his July 27th visit, he had sought treatment from a local osteopath and had been examined by his employer’s physician, Dr. Keith Mason. Neither of these medical practitioners were called to testify.
On November 23, 1970, Dr. Fox advised plaintiff a lumbar myelogram would be required to determine the cause of his continued complaints of pain and numbness in his low back and leg. Plaintiff submitted to this procedure and as a result thereof Dr. Fox recommended surgery for the correction of a suspected defective disc at either L-4 or L-5. The surgery was performed on December 4th and the disc at L-5 was found to be bulging sufficiently to require incision of the disc.
The case was tried on January 29, 1971, some eight weeks after Dr. Fox performed surgery on plaintiff. On November 30, 1971, the case was allowed to be reopened, over objection of defendant, and additional evidence taken concerning further surgery performed on plaintiff’s back subsequent to the initial trial.
The evidence shows after the initial surgery by Dr. Fox plaintiff continued to complain that the pain in his back and leg was as severe as before the surgery. On March' 22, 1971, Dr. Fox admitted plaintiff to Doctors Hospital in Shreveport for an additional myelogram. Dr. Heinz Faludi, a neurosurgeon of Shreveport, was called in for consultation and evaluation at this time. Plaintiff was treated by injections of Endicin and traction through April 6, 1971. His pain subsided after this treatment but a numbness continued in his left leg. The pain returned after several weeks and plaintiff continued to consult Dr. Faludi during May and June of 1971. On July 8, 1971, Dr. Faludi recommended a complete laminectomy to determine if there was an additional defect of the L-5 disc not corrected by the previous surgery. This procedure was performed by Dr. Fa-ludi on July 19, 1971, resulting in the removal of small recurrent disc fragments not removed in the initial operation. In addition, an adhesion of two large veins to a nerve was corrected. This procedure was apparently successful and plaintiff became relatively free of pain after a recuperative period of approximately two months.
Counsel for defendant takes the position in brief to this court that the testimony of Dr. Fox should be construed to conclude that he could not say within “any degree of medical certainty” that the disc involvement was caused by trauma received in the June 25, 1970 accident.
We do not find the testimony of the doctor to convey this intent. Taken as a whole, we understand the witness to say it is impossible for him to be absolutely certain the trauma ;of the accident caused the condition. As is usually the case, Dr. Fox explained it is necessary to rely primarily on the history given by the patient to evaluate causation. Although there are no medical records of complaints by plaintiff of back pain or leg pains immediately after the accident, this factor is evaluated in the testimony of Dr. Fox as follows:
“Q. It is not unusual for a man to develop the leg pain say thirty to sixty days after an accident, is it ?
“A. No, sir.
*437 “Q. Well, is it not unusual for a man to get in an accident, herniate a disc, and his symptoms just continue to worsen and worsen as this inan — in his case, at least?
“A. Well, we see that sometimes.
“Q. Well, assuming that prior to this accident this man had never had any back trouble, and assuming that the accident happened as he said it happened, you would have to say that in all likelihood this particular disc was ruptured in the accident ?
“A. We would have to say that it probably was. To be a little more certain we would have wanted some back complaints or leg complaints the day I saw him in the emergency room, this would have pinned this down a lot better actually.
“Q. Well, could it not have been that his arm and neck were bothering him more than his leg, and it kind of overruled the leg — the back pain that he was having on the first day that you saw him ?
“A. It is possible.”
Dr. Fox further testified the herniation of the disc in plaintiff’s back more probably resulted from trauma than from some ordinary daily activity (such as sneezing or bending) because of the apparently normal condition of the intervertebral spaces in plaintiff’s back, suggesting a lack of a degenerative condition.
Dr. Faludi, in testifying on the question of causation, was of the opinion the back injury was compatible with an automobile accident, and assuming plaintiff had no other intervening accident, and his symptoms or complaints of pain shortly after the accident which were continuous, a causal relationship did exist.
Defendant contends that the absence of visits by plaintiff to Dr. Fox during a sixty day period in September and October of 1970 indicate plaintiff was not having symptoms during this time of back injury, Defendant also infers that treatments given plaintiff by an osteopath during this period could have caused the disc injury.
This hypothesis is refuted by the testimony of Dr. Faludi who was of the opinion the osteopathic treatment would not have caused the herniation of the disc. Neither did he consider the break of two months in visits by plaintiff to the orthopedic specialist necessarily indicative he was not having some back or leg pain in view of the presence of the cervical sprain at that time which could have overshadowed minor pain in other regions.
Plaintiff testified he had never had any difficulty or pain in his back or leg prior to the accident. He also testified he had undergone a physical examination for his employment at AMF Beaird by their physician some six months prior to the accident. He further testified he had not had any other accident prior to or since the date of June 25, 1970, which could have caused the herniation of the disc. He testified he has not worked at the trade of machinist since the accident or engaged in any physical activities other than the exercise prescribed by Dr. Fox. This, testimony is corroborated by that of plaintiff’s wife.
The proof required by a plaintiff in a personal injury action to establish a causal connection between his injury and the negligent act forming the basis of the action was very ably discussed by the First Circuit in Jordan v. Travelers Insurance Co., 231 So.2d 678 (La.App. 1st Cir. 1970) as follows:
“We now turn our attention to the crucial issue in this instant matter and that is whether or not the negligent act of the defendant also brought about the subsequent mental residuals endured by plaintiff. For plaintiff to recover for these injuries he must establish that there is a causal relation between the two and that the injuries complained of did in fact result from the accident. In *438 shouldering this burden of proof, probabilities and possibilities are not enough; however, neither is plaintiff required to prove this causal relation beyond a reasonable doubt. The amount of proof required, therefore, involves a question of degree. The answer thereto is one of reasonableness. This is so because not all injuries are susceptible of proof by testimony that is beyond legitimate quandary. It is for this reason that our jurisprudence has provided that the legal requirement for the burden of proof is satisfied when plaintiff has established to a reasonable certainty that the negligent act caused his injuries. To prove less is not enough but to require more would make a plaintiff’s task an unreasonable one and in many cases impossible.”
Essentially, defendant’s argument on this appeal is that plaintiff exaggerated his injuries from the outset in this matter and that his testimony relating to when he began to have symptoms indicative of lumbar disc injury should be weighed in this light, and particularly in view of the alleged slight impact of the collision.
Insofar as the force of the collision is concerned, the evidence is conflicting in this regard. Although the pictures of plaintiff’s pickup truck do not depict much damage, they do show the heavy front bumper of the truck has been pulled loose on the left side. In any event, it is elementary that the extent of injuries are not necessarily in proportion to the force of the collision.
The weight to be. given the plaintiff’s testimony depends, on his credibility, and in the absence of any factors which show manifest error, the trial judge is in the better position to evaluate and determine the probative value to be accorded his testimony.
We are of the opinion the evidence presented by plaintiff can be interpreted as establishing to a reasonable certainty that his lumbar back injuries were caused by the accident and we find no manifest error on the part of the trial judge in so holding.
We further find no abuse of the discretion of the trial court in awarding the plaintiff an aggregate sum of $27,500 for personal injuries and other damages resulting from the accident.
The medical testimony shows a partial permanent disability of the body as a whole of between fifteen to eighteen percent resulting from plaintiff having undergone surgical removal of the disc. This is a minimum percentage of disability and the testimony of Dr. Faludi, who last treated and evaluated plaintiff’s condition, indicates he probably would be able to return to his former trade of a machinist.
Plaintiff was unable to work from the date of the accident through December, 1971, a period of approximately eighteen months. He has shown his average earnings were approximately $9,000 per year. Although the evidence on the exact amount of past medical expense incurred by plaintiff is difficult to ascertain from the record in this case, it is apparent that these expenses are in excess of $4,000. Plaintiff has undergone four periods of hospitalization for a total period of 43 days. He submitted to two myelogram tests, a somewhat painful spinal test, and two operative procedures.
Plaintiff recovered from the cervical sprain completely and in a reasonable time after the accident.
Plaintiff argues the amount awarded is so. inadequate to constitute an abuse of the trial judge’s discretion and cites a number of cases in which awards have been made in the range of $75,000 for serious back injury. In all the cases relied on by plaintiff the degree and extent of permanent disability was much greater than that sustained by him. We do not consider these cases sufficiently analogous to the instant case to cause us to conclude the trial judge has abused his discretion.
*439 For the foregoing reasons the judgment appealed from is affirmed. Costs of this appeal are to be shared equally by the parties.
Affirmed.