BOUTALL, Judge.
This case involves an intersectional collision. Defendant, Julia Dobbins, ran a stop sign and collided with a pickup truck containing Leonard Dequeant and his wife, Charlsie. The trial court rendered judgment in favor of plaintiffs and defendants appeal solely on the grounds that the trial court granted excessive damage awards.
The medical evidence shows that Mrs. Dequeant suffered a severe lumbosacral strain in the collision. She also received a very bad bruise to her right forearm. She suffered numbness in her right hand and fingers, causing her to lose much of the gripping power in her right hand.
These injuries are not disputed by defendants. The issue, as it relates to Mrs. Dequeant, is whether or not she additionally sustained a herniated disc in her cervical region. The trial court concluded that she had and relied upon the testimony of her treating physician, Dr. Ahlschier and consulting neurologist, Dr. Vogel.
The appellants rely upon the testimony of Dr. Howell and Dr. Carey. Dr. Howell saw Mrs. Dequeant on referral from Dr. Vogel. Dr. Vogel asked Dr. Howell to merely run two electrical conduction tests on Mrs. Dequeant’s arm for the purpose of discovery of the location of nerve injury which caused the symptoms in her arm. *557 These tests showed no evidence of cervical disc injury. Dr. Howell testified that the tests for the latter purpose are only accurate 60 to 70% of the time. Dr. Howell could not say that Mrs. Dequeant did not have a herniated cervical disc because his only function was to take the tests for the limited purpose stated and did not examine Mrs. Dequeant further. He stated that he prefers the myelogram test and usually doesn’t make a diagnosis of diseased disc until he has taken a patient history (which he didn’t) and run the conduction tests and myelogram.
Dr. Cary examined Mrs. Dequeant only once, three months after the accident. He took a history, gave her an examination and took x-rays. He states that he found no evidence of disc injury and felt that her problem was degenerative arthritis and a cervical strain.
Dr. Ahlschier, a general practitioner, treated Mrs. Dequeant for her injuries. Because of her high blood pressure, heart disease and hypertension, he was required to treat her very conservatively. After five months of treatment she had not responded satisfactorily and he suspected disc injury might be causing Mrs. De-queant’s pain. He then referred her to Dr. Vogel. Dr. Vogel’s diagnosis of Mrs. De-queant’s problem was severe lumbosacral strain which had resolved itself by the time he examined her and a subscapular herniated cervical disc which was going to slowly resolve itself. Dr. Vogel testified that it was his opinion that the numbness in her right hand was caused by an injury to the C-5, C-6 cervical disc area. He further stated that Dr. Howell was consulted merely to discover if her right arm had any neurological disorder and not for the purpose of diagnosing a herniated disc. Although Mrs. Dequeant still complains of pain and numbness in her right hand and fingers, she was discharged by Dr. Ahls-chier eight months after the accident occurred.
There is a great wealth of medical testimony as to Mrs. Dequeant’s injuries. The resolution of that testimony by the trial court was that Mrs. Dequeant sustained a herniated disc in addition to her other injuries. The record supports that result as the most probable one and we agree.
The trial court awarded Mrs. De-queant $3,616.38 in lost wages, which were stipulated to, and $10,000.00 for pain and suffering. Considering the injuries of Mrs. Dequeant we cannot say these awards go beyond the bounds of discretion afforded the trial court in R.C.C. article 1934 (3).
Mr. Dequeant was also injured in the accident and he also sought treatment with Dr. Ahlschier. Upon examination Mr. De-queant complained of pain in his right arm and neck. Dr. Ahlschier found no bruising. The doctor diagnosed his injury as a flexion injury to the cervical spine with severe spasms of the cervical muscles. Because of the patient’s high blood pressure and heart disease the doctor testified that he was forced to treat Mr. Dequeant very conservatively, mainly with heat treatments. However, even with conservative treatment Mr. Dequeant was discharged one month after the accident occurred.
The trial court granted Mr. De-queant an award of $7,500.00 for his pain and suffering, lost wages and the community medical bills, without itemizing these damages. The record discloses that the community medical bills totaled $2,968.46, and the stipulated sum of lost wages was $298.83. This leaves a sum of $4,232.71 as Mr. Dequeant’s award for pain and suffering.
We hold that an award of $4,232.71 for a cervical strain which completely resolved itself after one month of conservative treatment is excessive. We are aware of the “much discretion” afforded the trial court by R.C.C. article 1934(3). We have been referred to a number of cases involv *558 ing awards for cervical strain and other similar injuries. The facts in this case do not exhibit any extraordinary pain and suffering for the period involved.
Considering the rather minor nature of Mr. Dequeant’s injuries this court finds that an award of $1,500.00 for pain and suffering is quite sufficient.
Defendants’ final contention is that the medical bills of Dr. Ahlschier are grossly excessive and that many of the tests run on Mr. and Mrs. Dequeant were unnecessary for the treatment of their injuries.
In support of this issue defendant filed a third-party demand in the trial court against the doctor, apparently because of our ruling in Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir. 1972). As already pointed out, the trial court awarded “the medical expenses of the community” in a lump sum with the other damages. The judgment makes no disposition of the third party demand, although appellant in brief tells us that it was denied. The record shows the appearance of the doctor through counsel on the first day of trial, but no appearance on the second day. When defendant appealed, it only requested notice of appeal to plaintiffs. Under these circumstances we do not consider that the third party demand is before us but only the issues between plaintiffs and defendant.
The record before us gives some indication of overtreatment and overcharges because of the wide variety of tests, etc., not usually afforded in the ordinary case of a tort victim suffering these injuries. However, the only evidence on this issue is the testimony of Dr. Ahls-chier, almost entirely on cross-examination. Dr. Ahlschier stated that his charges were not out of line with the prevailing prices in the medical community; that he had checked on the prices and charges of others engaged in furnishing services and supplies, and adopted similar charges. As to the various tests run on the Dequeants, Dr. Ahlschier stated that both the Dequeants had high blood pressure, heart disease and a history of tuberculosis, and that he was forced (by sound medical standards) to consider the entire condition of the patient, so that treatment for one condition did not have a deleterious effect on the other medical problem. On both these points, defendants failed to introduce any evidence to rebut this testimony, or to show unusual behavior between doctor and patient, and we see no reason to disbelieve the testimony. In the absence of some showing of fault or bad faith on the part of the patient, we assess, between tort victim and tort feasor, the doctor’s charges against the tort feasor Hillebrandt v. Holsum Bakeries, Inc., supra.
For the above reasons the judgment of the trial court is amended to reduce the award in favor of Leonard Dequeant from $7,500.00 to $4,767.29; in all other respects the judgment is affirmed. Appellants to pay all costs.

AMENDED AND AFFIRMED.

LEMMON, J., concurs and assigns reasons.