375 So.2d 189 (1979)
Clint HARDIE, Plaintiff-Appellee,
v.
James R. PYLANT et al., Defendant-Appellant.
No. 13908.
Court of Appeal of Louisiana, Second Circuit.
August 27, 1979.
*190 Davenport, Files, Kelly & Marsh by Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
McKeithen, Burns & Wilkins, by Paul B. Wilkins, Columbia, for plaintiff-appellee.
Before BOLIN, HALL and JONES, JJ.
JONES, Judge.
Defendants appeal a judgment against them awarding plaintiff $20,000 for past and future physical and mental pain and suffering and $25,000 for loss of past income and impairment of future earning capacity. They contend that the general damage award should be reduced to $10,000 and the loss of past and future income award should be reversed as unsupported by the evidence. Plaintiff answers the appeal seeking an increase in the general damage award to $88,550 and an increase in the loss of past income and impairment of future earnings capacity award to the sum of $75,000.
The issues are should the awards be decreased, increased, or left undisturbed?
*191 Plaintiff was injured in an automobile accident on February 14, 1977 and the liability of defendants for his damages is not assigned as error on this appeal. Plaintiff's occupation was that of a heavy equipment operator and a commercial fisherman. In the accident he sustained injuries initially diagnosed as a severe lumbosacral sprain with extreme muscle tenderness and spasms for which he was hospitalized for approximately one week. He received in treatment of these injuries drugs, traction and physiotherapy. However, his pain, discomfort, and disability persisted following the initial hospitalization and the conservative treatment of his injuries, and in April he was referred by his family physician in Jena, Louisiana, to Dr. Rambach, an orthopedic surgeon in the City of Shreveport, Louisiana for further diagnosis and treatment. Following diagnostic tests this physician was of the opinion that plaintiff had disc pathology and performed back surgery upon him. The back surgery revealed no disc pathology, but disclosed that plaintiff had nerve root irritation at the 5th lumbar level caused by scar tissue which compressed the nerve over the surface of the disc and found that the small hole through which the nerve root left the spine was too small, requiring a surgical increase in its size, a procedure known as a foraminotomy. The surgery could not be categorized as successful because following the recuperation period, Dr. Rambach found plaintiff continued to suffer from stiffness, pain and discomfort in his back and left leg with weakness of the muscles of the back and legs. Dr. Rambach expressed the opinion that because of plaintiff's back pathology he had 20% permanent residual disability of the body as a whole and that plaintiff was unable to continue the occupation of a heavy equipment operator and a commercial fisherman.
Dr. Roy Ledbetter, an orthopedic surgeon, who examined plaintiff approximately two weeks before the trial of the case in April, 1978, found plaintiff's weakness in the back and leg and pain in these areas were due to scar tissue created following the initial injury or from the surgery performed to correct the original back injury resulting in plaintiff having a 25% residual disability of the body as a whole. Dr. Ledbetter articulated his percentage of disability as being based upon his opinion that because of plaintiff's weakness and pain, he would only be able to perform 75% of what a man of his age could ordinarily do. Neither Dr. Ledbetter nor Dr. Rambach believed that plaintiff's disability would increase.
Plaintiff did not work following his accident until October, 1977 when for a period of eleven weeks he attempted to operate a bulldozer. He testified that the weakness in his left leg, which is used to apply the brakes in the operation of a bulldozer, caused it to not function properly when he attempted to operate the bulldozer. He testified he was frequently required to stop the bulldozer, get off, and walk around in order to obtain relief from his leg and back pain. He testified that at night, following a day's work on the bulldozer, he would endure severe pain and discomfort. Plaintiff was not given an opportunity to continue to work on the bulldozer following this eleven week period, and he believed that the reason for his employer's failure to reemploy him was because of his inefficient operation of the bulldozer due to his physical disability and pain in connection with it. Because of his limitations, plaintiff has made no further attempts to secure employment as a heavy equipment operator.
Plaintiff further testified that he was unable to efficiently engage in his occupation as a commercial fisherman, because he could only stand up in the boat and take in his nets for about twenty-five minutes at a time, after which he was required to rest before resuming this strenuous physical activity. He explained that during the spawning season, which occurs in the spring of the year, fishing is good, and for that brief period he could earn a living with the yardage of nets (less than 1,000 yards) that he was capable of fishing. He stated that after the spawning period, it was necessary to fish with some 3,000 to 5,000 yards of net in order to catch a sufficient amount of fish *192 to earn a living, and that he was incapable of handling that much net because of his leg and back weakness and the pain flowing from these areas of the body. Plaintiff's description of his limitations as a commercial fisherman is not incompatible with the fact that as of the trial date, which occurred during the spawning season, he was earning $85 per day net as a commercial fisherman.
Plaintiff's plans for future employment is to take a course in small engine repair and to establish a shop offering this type of service to the public. Plaintiff anticipated that he could earn $6,500 annually from this work, which estimation was based upon his knowledge of the income of an acquaintance in the small engine repair business near Jonesville, Louisiana.
Plaintiff testified he was unable to deer hunt because of pain and discomfort which required him to move every 25 to 30-minutes. Successful deer hunting requires deer hunters to be still for long periods of time. He further states he is unable to enjoy the sport of squirrel hunting which requires walking, because he would have to stop and rest every 25 to 30-minutes. He is no longer able to play ball and skate because of back and leg discomfort.

WAS THE TRIAL JUDGE'S AWARD FOR PAIN AND SUFFERING EXCESSIVE OR INSUFFICIENT, OR SHOULD IT BE LEFT UNDISTURBED?
Defendants contend the trial court committed manifest error and abused its discretion by awarding plaintiff $20,000 for past and future pain and suffering and mental anguish. They argue he did not sustain a permanent injury to his back because he neither had a ruptured intervertebral disc nor required a spinal fusion, and for these reasons his injury did not justify an award of $20,000 for pain and suffering. Defendants offered no medical evidence to rebut the opinion of the two orthopedic surgeons who testified to plaintiff's past and future permanent pain, back and leg weakness and disability. They have shown no evidence that the scar tissue which resulted from the initial injury and surgical treatment does not create the pain and disability testified to by plaintiff, corroborated by his wife and both of the orthopedics.
For these reasons, we find defendants' argument that because of the absence of a disc injury plaintiff has little disability to be totally without merit.
The Supreme Court in the very recent decision of Reck v. Stevens, 373 So.2d 498 (La.1979) reiterated the function of an appellate court in reviewing the trial court's award of general damages as follows:
"Civil Code Article 1934(3) provides that, in the assessment of general damages, `much discretion must be left to the [trial] judge or jury * * *'. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) is the fountainhead decision of modern jurisprudence interpreting and applying this code provision. In annuling an appellate change of the trier of fact's award for general damages, we there stated, 158 So.2d 158:
`The primary question before the appellate court, then, is whether the judge or the jury in fixing the amount of the award has abused its great discretion vested in them by law. . . . [Prior decisional awards] relied upon may be similar in that each of them involve a similar injury such as broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances peculiar to the case under consideration. The primary purpose of the judge or jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case.'
We elaborated on the methodology of appellate review of awards for general damages in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). We there stated, 341 So.2d 335-336 (Italics supplied and citations omitted):

*193 `We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.'"
The defendants cite seven cases involving back and disc injuries which they contend establish that the trial court has abused its discretion in the general damage award to plaintiff. We quote from defendants' brief their discussion of each case.[1]
The use of prior awards in medically similar injuries for the purpose of determining what award an individual plaintiff should receive will not be condoned by the supreme court.
In Reck v. Stevens, supra, we find the following comment:
"The use of such a scale or prior awards, made for merely generically similar medical injuries, has been expressly and repeatedly disapproved by Gaspard and the succeeding jurisprudence. Such a hypothetical scale of hypothetical awards cannot be used to determine whether or not this trier of fact has abused its discretion in the award to this particular plaintiff under the facts and circumstances peculiar to this case."
*194 The duty of the appellate court is to review the facts and circumstances surrounding the case wherein the award is made for the purpose of determining if there has been an abuse of the much discretion vested in the trial judge in making the general damage award, and it is only after an abuse of discretion has been affirmatively found that an inquiry into what change in the award must be made. Any such change increasing or decreasing the award made by the appellate court shall not fix an amount which it would have awarded had it been the trier of fact, but rather the amount so fixed by it shall be determined in the manner mandated by Coco v. Winston, supra, and reasserted by Reck v. Stevens, supra, this being that in the case of an increase the amount arrived at shall be the lowest figure which the trial judge could have assessed in the exercise of his much discretion and in the case of a decrease the amount should be the highest amount which the trial judge could have assessed in the exercise of his much discretion. The function of prior awards in the initial determination of whether there has been an abuse of discretion is limited to the following narrow use by Reck v. Stevens, supra:
"The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards."
Our review of the cases cited by defendant contained in our Footnote 1 reflects substantial factual dissimilarities (or a failure of the reported opinion to reflect factual similarities) in each of them from the instant case and for that reason, they have no value as comparables for the purpose of determining whether the trial court's award is "greatly disproportionate to past awards".
In Wheat v. Seng, Fn. 1, plaintiff had prior back difficulty and following the surgery she was able to return to her prior work. The opinion does not indicate that she had any significant pain following surgery.
In Smithers v. St. Farm, Fn. 1, the opinion reflects plaintiff became relatively pain free following a two month recuperative period after the second surgery and that plaintiff was probably able to return to his former trade as a machinist.
In Dufrene v. Miller, Fn. 1, plaintiff had a history of prior back pathology and the opinion does not reflect that he sustained any pain or disability following the disc surgery.
In Mitchell v. Hepinstall, Fn. 1, plaintiff had a severe back condition prior to the accident and the opinion reflects that the record did not establish his future employment possibilities.
In Dequeant v. Dobbins, Fn. 1, plaintiff had no surgery and her neurosurgeon testified her cervical disc was going to slowly resolve itself. The opinion does not reflect that she was going to have any permanent pain or disability because of her injury.
In Watson v. Hartford, [plaintiff] stated "[w]ithin approximately two months following the accident he was relatively free from back pain and received no further treatment or medication."
In Passman v. Bienvenu, Fn. 1, the opinion does not reflect that plaintiff had any pain or disability following the surgery and neither plaintiff nor defendant assigned as trial court error the amount of the award.
The evidence establishes that plaintiff endured pain and discomfort from his injuries following the accident and the surgical attempt to improve his condition was unsuccessful. He will permanently continue to endure some pain and discomfort and some disability in his back and leg. For this reason we find the trial judge did not abuse his much discretion in making the $20,000 award.
Plaintiff contends the general damage award should be increased to $75,000. He cites Edwards v. Sims, 294 So.2d 611 (La. App. 4th Cir. 1974) where a plaintiff receives a general damage award of $60,000 as authority for increasing his award. Plaintiff in Sims, supra, had back injuries which left him with residual pain and discomfort *195 requiring him to change his occupation from a bakery truck driver to an office building guard. This plaintiff was hospitalized four times for a total of 67 days and underwent three separate surgical procedures to his back and extensive outpatient treatments. He was only able to function in an extremely sedentary occupation.
The circumstances concerning the pain and suffering endured by plaintiff in the Sims case are substantially dissimilar from the facts presented in this litigation. The plaintiff here was hospitalized about 17 days and had only one surgery. We also observe that not only is the case disqualified from consideration because of dissimilarity, but consideration of the quantum award in one case cannot meet the test set by Reck for the use of similar past awards in consideration of whether the trial judge abused his discretion:
". . . not selected past awards, but the mass of them." The Sims case is not authority for disturbing plaintiff's general damage award.
Plaintiff endures some pain but it is not so severe that it prevented him from operating a bulldozer for eleven weeks (6 months post surgery) and engaging in limited, but successful, commercial fishing operations at the time of trial in April, 1978.
Considering all the circumstances, we do not find the trial judge abused his much discretion in not awarding the plaintiff a sum larger than $20,000 for past and future pain and suffering.

ISSUE OF PAST LOSS OF WAGES AND IMPAIRMENT OF EARNING CAPACITY
Defendants contend plaintiff failed to prove his claim for loss of past and future wages. The three cases which they cite in support of their position that the judgment for the loss of wages should be reversed involve situations wherein plaintiff's testimony of loss of wages was not supported by any substantial corroborative evidence. In Hurd v. Toups, 348 So.2d 1270 (La.App. 4th Cir. 1977), plaintiff's testimony of loss of wages of over $100 per week and for $1,000 in one two-week period was rejected when supported by no corroborative evidence other than two order books reflecting orders taken by plaintiff in two months of her employment as a door-to-door salesman. In Potts v. Hollier, 344 So.2d 70 (La.App. 4th Cir. 1977), a loss of wage judgment based upon plaintiff's testimony and a stipulation which defendant denied making was reversed and the case remanded to give plaintiff an opportunity to establish his claim for loss of wages, along with other specials contained within the disputed stipulation. In Boyles v. Bridgeman, 342 So.2d 1150 (La.App. 1st Cir. 1977), the court in reversing a trial court judgment for loss of wages made the following statement:
". . . [N]o effort was made to corroborate the testimony of Mrs. Boyles as to her loss income by use of her income tax returns, testimony from her employer, or any other supportive evidence, nor was it shown that corroboration was unavailable." Id. at 1152
The plaintiff corroborated his testimony of income for three years prior to his injury by W2 Forms reflecting wages earned as a heavy equipment operator and with "fish tickets" representing the sale to fish markets of fish he caught in his commercial fishing operation. This evidence establishes an average monthly earning of $576.00. Plaintiff contends that had he saved all of his "fish tickets" and had his former wife not destroyed many of the tickets that he had saved, he could have documented monthly income of approximately $762.00. Plaintiff's claim for loss of income was also corroborated by the testimony of two witnesses who were familiar with his work as a heavy equipment operator and a commercial fisherman. Proof of plaintiff's loss of income far exceeds that contained in the cases cited by defendants.
While defendants do not strongly deny plaintiff established average monthly income of $576.00, they contend that his failure to include tax returns within his evidence denies him the right to assert the loss wage claim. While "net wage" is a *196 proper guideline for determining the amount of loss wage claim, see Potts v. Hollier, supra, there is no rule that failure to establish that tax returns were filed and to include them within the evidence results in rejection of the loss of income claimed.
In the case of Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971), the Supreme Court awarded $10,000 for past and future income where no income tax returns were filed. The plaintiff, a $100 per week carpenter and a $75 per month part-time baker helper, corroborated his loss of wage claim by his employer and other witnesses who were familiar with his work activities. The court said:
"We find no reason to question the proof of more-probable-than-not loss of earnings so made, simply because Jordan did not introduce his income tax returns or other records to substantiate whatever loss this testimony proved." Id. at 156.
While it cannot be determined from the record the exact amount of income that plaintiff's incapacity prevented him from earning between the accident and the trial date, it does clearly establish that he was unable to work at all for about six months during 1977. He is going to be required due to his disability to find less strenuous employment.
Our law does not require plaintiff to establish his loss in an exact amount in order to be entitled to an award for past and future loss of income. In Jordan v. Travelers, supra, the court stated:
"Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case. Civil Code Art. 1934(3); Brantley v. Tremont & Gulf Ry. Co., 226 La. 176, 75 So.2d 236 (1954), and decisions therein cited. This latter principle is also applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount. (Citations omitted) * * *
* * * In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence. * * *
* * * Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." Id. at 155.
See also Folse v. Fakouri, 371 So.2d 1120 (La.1979); Harris v. Bardwell, 373 So.2d 777 (La.App. 2d Cir. 1979).
Applying these principles, there is adequate evidence in the record for the trial court within its discretion to have made the $25,000 past and future loss of wage award.
The plaintiff contends that the award is inadequate. We observe that as of trial date plaintiff was employed in some commercial fishing activity that was netting him $85 per day. He had plans to prepare himself for a career as a small engine repairman which activity he could engage in with his physical limitations. He testified an acquaintance earned $6,500 per year engaged in this activity which approximates the annual average income that plaintiff proved with corroborating evidence he received during the three years preceding his injury. The evidence does not show the period of time that plaintiff will be required to spend preparing to become a small engine repairman nor how long it will take after he sets up shop before he can reasonably anticipate earnings comparable to those received by the small engine repairman with whom he is familiar.
Considering plaintiff's proven ability to function with his limitations and his plans for the future, we do not find the $25,000 award made by the trial judge to be insufficient. It was supported by the evidence and well within his much discretion and may not be disturbed on appeal.
Judgment is affirmed at appellant's cost.
NOTES
[1] In Wheat v. Seng, 322 So.2d 863 (La.App. 1st Cir. 1975) a barmaid suffered a ruptured lumbar intervertebral disc that was surgically removed, resulting in a fifteen per cent (15%) to 20% disability assessment. She was prohibited from lifting heavy objects due to the permanent weakening of her spine. An award of Eleven Thousand and No/100 ($11,000.00) Dollars was made.

In Smithers v. State Farm Mutual Automobile Insurance Company, 286 So.2d 433 (La. App. 2d Cir. 1973) plaintiff earned approximately Nine Thousand and No/100 ($9,000.00) Dollars per year, had medical expenses in excess of Four Thousand and No/100 ($4,000.00) Dollars, had two (2) operations to remove a ruptured intervertebral disc in his lumbar spine, had proven lost wages for eighteen (18) months, and suffered a permanent partial disability of fifteen (15) to eighteen (18) per cent due to the permanent injury to his spine. Twenty-Seven Thousand Five Hundred and No/100 ($27,500.00) Dollars was awarded which included the lost wages of approximately Thirteen Thousand Five Hundred and No/100 ($13,500.00) Dollars and the medical expenses of Four Thousand and No/100 ($4,000.00) Dollars for an award for general damages of Ten Thousand and No/100 ($10,000.00) Dollars.
In Dufrene v. Miller, 266 So.2d 462 (La.App. 4th Cir. 1972) Seven Thousand Five Hundred and No/100 ($7,500.00) Dollars, plus proven medical expenses was awarded to a 64-year old gentleman who suffered a ruptured intervertebral disc in his cervical spine which was surgically removed.
In Mitchell v. Hepinstall Steel Co., 264 So.2d 325 (La.App. 4th Cir. 1972) a 42-year old laborer earning an annual average wage of Six Thousand and No/100 ($6,000.00) Dollars to Seven Thousand and No/100 ($7,000.00) Dollars had two (2) intervertebral discs surgically removed which resulted in a fifteen per cent (15%) impairment, and he was awarded Fifteen Thousand and No/100 ($15,000.00) Dollars to include general damages as well as impairment of his earning capacity.
In Dequeant v. Dobbins, 334 So.2d 555 (La. App. 4th Cir. 1976) plaintiff suffered a probable ruptured intervertebral disc in the cervical spine, but had not submitted to surgery. An award of Ten Thousand and No/100 ($10,000.00) Dollars was upheld for general damages, this being in excess of proven lost wages and medical expenses incurred.
This Honorable Court in its decision of Watson v. Hartford Accident & Indemnity Company, 339 So.2d 480 (La.App. 2d Cir. 1976) awarded Eighteen Thousand and No/100 ($18,000.00) Dollars to a 20-year old male college student with a severe compressed fracture of the fourth lumbar vertebra, resulting in a twenty-five per cent (25%) permanent disability to his spine and body as a whole.
In Passman v. Bienvenu, 277 So.2d 451 (La. App. 1st Cir. 1973) a sergeant with the Louisiana State Police was awarded Six Thousand Five Hundred and No/100 ($6,500.00) Dollars following surgical removal of a ruptured intervertebral disc.