# Supreme Court of Louisiana

The Opinions handed down on the **1st day of July, 2014**, are as follows:

**BY CLARK, J.**:

2013-CC-2985     AARON EMIGH, ET AL.  v. WEST CALCASIEU CAMERON HOSPITAL, ET AL. (Parish of Calcasieu)

For the reasons provided herein, we affirm the trial court's ruling overruling Blue Cross's exception and remand for proceedings consistent with this opinion.
AFFIRMED AND REMANDED.

VICTORY, J., dissents for the reasons assigned by Justice Guidry.
GUIDRY, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2013-CC-2985

AARON EMIGH, ET AL.

VERSUS

WEST CALCASIEU CAMERON HOSPITAL, ET AL.

ON SUPERVISORY WRITS TO THE FOURTEENTH JUDICIAL
DISTRICT COURT FOR THE PARISH OF CALCASIEU

**CLARK, JUSTICE**

A putative class action was filed against West Calcasieu Cameron Hospital

(hereinafter referred to as "WCCH") for alleged violations of La. R.S. 22:1874, also

known as the "Balance Billing Act." This suit was expanded to name several health

insurance issuers as defendants. The current claim under review is asserted by the

plaintiff Laura Delouche against her insurer, Louisiana Health Service & Indemnity

Company, d/b/a Blue Cross and Blue Shield of Louisiana (hereinafter referred to as

"Blue Cross"). We granted certiorari to determine whether a cause of action exists,

whereby Delouche can pursue a legal remedy against Blue Cross. For the reasons

that follow, we affirm the lower court's denial of Blue Cross's exception of no cause

of action and remand for proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

On or about August 13, 2010, Delouche was injured in an automobile accident

and received treatment at WCCH in Calcasieu Parish. As alleged in the petition for

damages, Delouche was insured by Blue Cross at the time of the accident under an

individual Blue Saver High Deductible policy.[1] Pursuant to this policy of health

---

[1] Delouche had a $1,700 deductible amount, which she must annually satisfy before Blue Cross tenders any payment for health care costs.

insurance, Delouche paid premiums and agreed to use specific providers in exchange for reduced health care rates, known in the policy as the "Allowable Charge."[2] WCCH was a "contracted health care provider" with Blue Cross, as defined in La. R.S. 22:1872(6). As such and pursuant to the Provider Agreement between WCCH and Blue Cross, WCCH contractually agreed to accept these reduced rates as payment in full for services provided to the Blue Cross insured (Delouche). Additionally, WCCH agreed to hold the insured (Delouche) harmless for any amounts other than any applicable deductible, co-pay, and/or coinsurance.

At the time of treatment, Delouche notified WCCH that she was insured by Blue Cross; however, WCCH refused to accept her insurance and ignored the agreed upon reduced price. Instead, WCCH charged Delouche the full, undiscounted amount of $718.00 and asserted a lien against any tort recovery Delouche may receive from a third party as a result of the automobile accident. This practice of rejecting insurance and collecting or attempting to collect full charges is referred to as "balance billing" and is prohibited by law. *See* La. R.S. 22:1874. Delouche sued WCCH for this practice of over-billing.[3]

In a supplemental petition, Delouche added Blue Cross as a defendant, claiming Blue Cross was liable for WCCH's failure to perform. Blue Cross filed several exceptions, including an exception of no cause of action. The trial court

---

[2] The Blue Saver policy defines "Allowable Charge" as: "[t]he lesser of the billed charge or the amount established by Us or negotiated as the maximum amount allowed for all Provider services covered under the terms of this Contract." This term represents the maximum amount the health care provider can bill an insured for a covered service, procedure, or treatment.

[3] The liability of a health care provider for balance billing is the central issue in the underlying class action against WCCH and is not currently before this court in this case. While balance billing in the context of La. R.S. 22:1874 is not a concern in this matter, we considered its legal consequences in a separate case. *See Anderson v. Ochsner*, 13-2970 (La. __) _ So.3d _.

2

overruled the exception, and the court of appeal denied writs, with one dissenting judge noting that a full opinion was required.[4]

Blue Cross filed a writ application with this court. We granted certiorari to determine whether the factual allegations in Delouche's petition give rise to any cause of action against Blue Cross.[5]

## APPLICABLE LAW

The peremptory exception of no cause of action is designed to test the legal sufficiency of a petition by determining whether a party is afforded a remedy in law based on the facts alleged in the pleading. La. Code Civ.P. art. 927; *Everything on Wheels Subaru, Inc. v. Subaru South, Inc., et al.*, 616 So.2d 1234, 1235 (La. 1993). All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. La. Code Civ.P. art. 865; *Kuebler v. Martin*, 578 So.2d 113, 114 (La. 1991). The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Fink v. Byrant*, 01-0987, p. 4 (La. 11/28/01), 801 So.2d 346, 349.

In Greemon v. City of Bossier City, 2010-2828, p. 8 (La. 7/1/11), 65 So. 3d 1263, 1268, this court explained Louisiana's fact pleading system:

> Louisiana's Code of Civil Procedure uses a system of pleading based upon the narration of factual allegations. *See Montalvo v. Sondes,* 93–2813, p. 6 (La.5/23/94), 637 So.2d 127, 131. As described in La. Code Civ.P. art. 854: "No technical forms of pleading are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs." The fact-pleading requirement replaces an earlier "theory of the case" pleading requirement. *See* La. Code Civ.P. art. 862, Official Revision Comments—1960, cmt. (b). Because the "theory of the case" pleading requirement has been abolished, "[s]o long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence." *Cox*

---

[4] *Emigh v. West Calcasieu Cameron Hospital*, 13-1038 (La. App. 3 Cir. 11/26/13), _ So. 3d _.

[5] *Emigh v. West Calcasieu Cameron Hospital*, 13-2985 (La. 3/14/14), 134 So.3d 1184.

3

*v. W.M. Heroman & Co., Inc.,* 298 So.2d 848, 855 (La.1974), *overruled on other grounds by A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp.,* 94–2011, p. 9 (La.6/30/95), 657 So.2d 1292, 1299. However, even though the "theory of the case" need no longer be pled, La. Civ. P. art. 891 provides that a petition "shall contain a short, clear, and concise statement of all causes of action arising out of, and of the **material facts** of, the transaction or occurrence that is the subject matter of the litigation." (Emphasis added.)

The sufficiency of a petition subject to an exception of no cause of action is a question of law, and a *de novo* standard is applied to the review of legal questions; this court renders a judgment based on the record without deference to the legal conclusions of the lower courts. *See Foti v. Holliday,* 2009–0093, p. 6 (La.10/30/09), 27 So.3d 813, 817.

### DISCUSSION

To determine whether any valid cause of action exists, we must examine the factual allegations contained in the petition. We note that typically evidence is not allowed to be admitted to support or controvert an exception of no cause of action. *See* La. Code Civ. P. art. 931. However, the parties, without objection, admitted the contracts at issue, thereby expanding what the court may examine in determining whether a legal remedy exists. (*See City of New Orleans v. Bd. of Directors of Louisiana State Museum*, 98-1170 (La. 3/2/99), 739 So. 2d 748, 756, wherein the court recognized the jurisprudential exception to the rule that allows evidence admitted without an objection to enlarge the pleadings.)

Delouche alleges Blue Cross "agreed and promised that if its insureds were treated by a contracted health care provider, such as WCCH, the provider would submit claims to the insurer, and that all that the insured would be required to pay to the provider for covered services would be any deductible, co-payment, co-insurance or other amounts as provided for in the policy of insurance as the insured[']s responsibility." Delouche alleges that WCCH did not comply with its obligations.

4

Thus, as averred in her petition, Blue Cross is liable for WCCH's failure to perform as promised by Blue Cross. The petition generally alleges liability under a breach of contract theory and also detrimental reliance. Moreover, Delouche contends Blue Cross "has failed to take reasonable steps to enforce the agreement and promise described above, and has allowed and encouraged WCCH" to engage in this prohibited billing practice.

In support of her lawsuit, Delouche contends the petition clearly states a cause of action. She, an insured, entered into a contract with Blue Cross whereby she agreed to pay premiums in exchange for the availability of negotiated group discounts for health care costs.[6] She contends she upheld her obligation but did not receive the

_____

[6] Delouche points to the policy language to support her argument: "[the insured] will not be billed the $[] difference between the Hospital's billed charge and the Allowable Charge for the Covered Service."

Further, The policy offers these two examples of coverage. Because the record has not yet revealed whether WCCH was a PPO Provider Hospital or a Participating Hospital with Blue Cross, both examples illustrated in the policy are included:

> **EXAMPLE:** You have a Subscriber Only (single Member) PPO policy with a $1,700 annual Deductible Amount. You have 100% / 0% Coinsurance when You receive Covered Services from Hospitals in the PPO Network and 80% / 20% Coinsurance when you receive Covered Services from Hospitals that are not in the PPO Network. You receive Covered Services at a Hospital that are not Emergency Medical Services and the charge for the service is $3,000. We have negotiated an Allowable Charge of $1,000 with our PPO Hospitals for this service. We have negotiated an Allowable Charge of $1,200 with our Participating Hospitals for this service. You have previously met Your annual $1,700 Deductible Amount.

> **Scenario 1:** **When You Go To A PPO Provider Hospital**

> When you receive Medically Necessary Covered Services from a PPO Hospital, We pay the PPO Provider Allowable Charge, less any applicable Coinsurance amount that You pay. Because of the agreement that this Hospital signed with Us to be in Our PPO Network, the Hospital will accept the Allowable Charge of $1,000 for Your Covered Service as payment in full. You pay nothing (Your 0% Coinsurance of the Allowable Charge) and We pay $1,000 (Our 100% Coinsurance of the Allowable Charge). Also, because of Our Agreement with this Hospital, You will not be billed for the $2,000 difference between the Hospital's billed charge and the Allowable Charge for the Covered Service.

> Had you not met Your Deductible Amount in the above example, the Allowable Charge of $1,000 would count toward Your Deductible Amount of $1,700.

> **Scenario 2:** **When You Go To A Participating Hospital**

5

promised discount. Additionally, Delouche argues Blue Cross promised that the provider (WCCH) would file all claims with Blue Cross on her behalf, as the insured, but WCCH did not submit her claim to Blue Cross. Instead, WCCH actively rejected her insurance. Delouche contends this is an additional example of Blue Cross disregarding its promise to her. Blue Cross's failure to deliver what it promised subjects it to liability.

Blue Cross, in defending its exception of no cause of action, argues the sole object of the contract between itself and its insured, Delouche, is payment of covered medical expenses. Blue Cross asserts it did not promise that a third party contracted provider would honor its billing obligations. Rather, the billing obligations of the provider as established by the Provider Agreement between Blue Cross and WCCH are simply accessories to and a means of fulfilling the underlying object of paying for covered benefits. Thus, as argued by Blue Cross, if WCCH's performance is not the object of the insurance contract between Blue Cross and Delouche, it stands to reason that WCCH's non-performance cannot constitute a breach of the insurance contract by Blue Cross. Further, Blue Cross contends that it is not obligated to police the acts of a provider or act as its surety.

The trial court, in overruling Blue Cross's exception, found there to be a valid cause of action under La. Civ. Code art. 1977, which provides:

When you receive Medically Necessary Covered Services from a Participating Hospital, We pay our Coinsurance percentage of the Participating Provider Allowable Charge, less any applicable Coinsurance amount that You pay.

Because of this agreement that this Hospital signed with Us to be in Our Participating Provider Network, the Hospital will accept the Allowable Charge of $1,200 for Your Covered Service as payment in full. We pay $960 (Our 80% Coinsurance of the Allowable Charge) and You pay $240 (Your 20% Coinsurance of the Allowable Charge). Also because of Our Agreement with this Hospital, You will not be billed for the $1,800 difference between the Hospital's billed charge and the Allowable Charge for the Covered Service.

6

The object of a contract may be that a third person will incur an obligation or render a performance.

The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform.

This civilian concept known as *promesse de porte-fort* contemplates a contract in which the object is that a third party will undertake a certain obligation; in the event of non-performance of that obligation by the third party, the promisor becomes liable to the promisee. Blue Cross, as mentioned above, argues the object of the contract is solely to pay for covered health care services. Delouche acknowledges that payment of covered medical bills is an obvious object of the contract, but she contends the object extends beyond mere payment based on the terms and conditions of the contract of insurance. Rather, the object is to also secure reduced health care costs and tender payment for those negotiated, discounted costs.[7] We agree with Delouche.

In this two-contract health care system that affects the majority of health insurance policies in this state, the insurance issuer, such as Blue Cross, promises to its insureds, such as Delouche, coverage and the availability of discounted rates based on the existence of its contract with its contracted providers, such as WCCH. The purpose of a health insurance contract and the very reason insureds obligate themselves to the payment of premiums and a restricted choice of in-network providers, is to receive coverage and the benefits of negotiated, reduced health care costs. To narrowly construe the object to mean only payment of covered charges, as Blue Cross argues, ignores the *raison d'etre* of the contract: an economic benefit to

---

[7] Delouche also asserts that a second object of the contract is that the provider will file a claim with Blue Cross. However, she concedes the primary object of promising discounted rates exists even if the promise that the provider would submit the claim is not found to be a legitimate object of the contract. As such, we limit our discussion to the contention that the promise of lowered rates is the object of the contract.

7

the insured. Holding otherwise is illogical based on the terms of this high deductible policy, where the promised reduced rate attaches the instant a medical charge is incurred, regardless of whether a deductible has been satisfied. The insurance policy at issue promised that even the out-of-pocket expenses that count towards Delouche's deductible would be subject to a discount.[8] If all that was promised by Blue Cross was coverage of the maximum amount, the incentive to have insurance, specifically a high deductible policy, dissipates insofar as the insured could simply pay the non-discounted bill herself without also incurring the costs of premiums. For these reasons, we find an object of the contract is the entitlement to discounted health care costs.

The actual billing of this promised, discounted charge is performed by a third party. Thus, Blue Cross is promising that a third party will render a performance, which fits squarely within the context of La. Civ. Code art. 1977.[9]

Blue Cross avers this interpretation as argued by Delouche amounts to suretyship or vicarious liability; however, we observe that Blue Cross itself entered into the contract with Delouche and made certain assurances. The fact that Blue Cross could only deliver based on third party performance does not make Blue Cross immune to liability. Thus, we find, at a minimum, the material facts alleged in the petition are sufficient to survive an exception of no cause of action under La. Civ.

---

[8] For instance, under the facts of this case, because Delouche had not yet satisfied her deductible, her personal financial responsibility would be less than the $718.00 maximum charge had her insurance been honored.

[9] Even if we found mere payment of medical bills was the object of the contract, we find WCCH's failure to accept Delouche's insurance at all, despite Blue Cross's assurances to the contrary, still exposes Blue Cross to liability under La. Civ. Code art. 1977.

Code art. 1977. We expressly offer no opinion as to the success of this claim, only that Delouche is afforded the right to judicially assert an action against Blue Cross.[10]

## FACTUAL DEFENSES

Blue Cross acknowledges that WCCH, as the provider, contractually agreed to file claims for services rendered to insureds for payment by Blue Cross. Blue Cross further points to policy language that instructs an insured how to file his/her own claim. Blue Cross argues that, despite these provisions, no claim for the treatment after the accident was ever filed in this matter by either WCCH or Delouche. Without a submitted claim, there was nothing to process. Thus, Blue Cross avers it cannot be liable. Next, Blue Cross argues Delouche did not meet any of her $1,700.00 deductible and because the charge of $718.00 was less than the deductible, Blue Cross would not pay any of this amount regardless of the circumstances. Lastly, in defense, Blue Cross relies on the following contractual language to support its argument that its liability is limited by virtue of the policy between itself and Delouche:

Non Responsibility for Acts of Providers:

We will not be liable for or on account of any fault, act, omission, negligence, misfeasance, malfeasance or malpractice on the part of any Hospital or other institution, or any agent or employee thereof, or on the part of any Physician, Allied Provider, nurse, technician or other person participating in or having to do with Your care or treatment.

We find these factual defenses are relevant to the merits of this case and are not appropriate to consider at this stage of the proceeding. Accordingly, we expressly

---

[10] Insofar as Delouche relies on other theories of the law in her suit against Blue Cross, we offer no opinion as to their existence as valid causes of action or to their ultimate success. Nothing in this opinion should be construed as limiting her ability to pursue any theory of her case to the extent the law allows nor should it be construed as endorsing one remedy over any others. Rather, having found the factual allegations in Delouche's petition give rise to her right to proceed, we pretermit discussion of additional claims.

decline to entertain them and offer no conclusions as to the success of the underlying claims or defenses of Delouche and Blue Cross, respectively.

## CONCLUSION

To conclude, we find Delouche's petition sufficiently alleges facts to survive Blue Cross's exception of no cause of action. For the reasons provided herein, we affirm the trial court's ruling overruling Blue Cross's exception and remand for proceedings consistent with this opinion.

**AFFIRMED AND REMANDED.**

**07/01/14**

# SUPREME COURT OF LOUISIANA

## NO. 2013-CC-2985

*AARON EMIGH, ET AL.*

*VERSUS*

*WEST CALCASIEU CAMERON HOSPITAL, ET AL.*

**ON SUPERVISORY WRITS TO THE FOURTEENTH JUDICIAL DISTRICT COURT FOR THE PARISH OF CALCASIEU**

**VICTORY, J., dissents for the reasons assigned by J. GUIDRY.**

SUPREME COURT OF LOUISIANA

NO.  2013-CC-2985

AARON EMIGH, ET AL.

VERSUS

WEST CALCASIEU CAMERON HOSPITAL, ET AL.

**Guidry, Justice, dissents and assigns reasons.**

I respectfully dissent from the majority's holding that the plaintiff has asserted a cause of action against her health insurer under either the Health Care and Consumer Billing and Disclosure Protection Act, La. Rev. State. 22:1871 *et seq.* (commonly known as the "Balance Billing Act") or La. Civ. Code art. 1977.

The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to the plaintiff under the factual allegations of the petition.  *Kinchen v. Livingston Parish Council*, 07-0478 (La. 10/16/07), 967 So.2d 1138. Here, the plaintiff seeks to recover damages against her health insurer for her health care provider's alleged violations of the Balance Billing Act.  However, in my view, the legislature has not provided the insured a private right of action under the Balance Billing Act against the health care provider for improper billing or collection practices; therefore, it certainly has not provided the insured with an action against her health insurer for her health care provider's alleged violation of the Act.  As I explained in my dissent in the companion case of *Yana Anderson v. Ochsner Health System and Ochsner Clinic Foundation*, 13-CC-2970 (La. _/_/14), __ So.3d __,

1

(Guidry, J., dissenting), the legislature has expressly provided two remedies for a health care provider's violations of the Balance Billing Act. Specifically, an insured may file a complaint with the Consumer Protection Division of the Department of Justice pursuant to La. Rev. Stat. 22:1877(A)(1), which delegates to the attorney general the discretion to pursue remedies under the Louisiana Unfair Trade Practices Act, La. Rev. Stat. 51:1401 *et seq.* Alternatively, in the event the health care provider maintains an action at law seeking to enforce a lien against the insured for an amount in excess of the reimbursement rate, the insured is entitled to attorneys fees and costs if the suit is successfully defended. La. Rev. Stat. 22:1874(B).

I also find no merit in the majority's reliance on La. Civ. Code art. 1977 to circumvent the insured's lack of privity of contract to support her breach of contract claims. The plaintiff pleaded the provisions of not only her contract with her health insurer, but also the provider agreement between the health insurer and the health care provider. While the majority concedes the insured is not a party to the provider agreement, it suggests by virtue of the insured's contract with her insurer, who allegedly promised discounted rates, that the insurer has guaranteed the health care provider's performance of its obligations under the Balance Billing Act. However, there is no *promesse de porte-fort* as alleged by the insured, because if there is no private right of action for an insured against the health care provider who violates the Act, there can be no cause of action by the insured against the health insurer for its failure to guarantee the performance of the health care provider under the Balance Billing Act.

2