Judgment rendered October 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,684-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KIM R. SMITH LOGGING, INC.                    Plaintiff-Appellant

versus

INDIGO MINERALS LLC, ET AL.                   Defendant-Appellee

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 81,922

Honorable Amy Burford McCartney, Judge

* * * * *

COLVIN, SMITH, MCKAY & BAYS                   Counsel for Appellant
By: Cole B. Smith
    J. Jay Caraway
    J. Clayton Caraway

PATTON LAW FIRM, LLC                          Counsel for Appellee,
By: Margaret G. Patton                        SWN Production
                                      (Louisiana), LLC

* * * * *

Before PITMAN, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Kim R. Smith Logging, Inc., appeals a district court judgment sustaining a dilatory exception of prematurity and a peremptory exception of no cause of action filed by defendant, SWN Production (Louisiana), LLC.  For the following reasons, we reverse the judgment and remand this matter to the district court for further proceedings.

## FACTS

The property in dispute is located in the Haynesville Shale area in DeSoto Parish, Louisiana.  The property is described as follows:

> The North Half of the Southeast Quarter (N/2 of SE/4) of said Section 27, and a tract beginning at the Southeast corner of the Northeast Quarter of the Northeast Quarter (SE/c of NE/4 of NE/4) of said section, thence West 55 yards, thence North 440 yards, thence East 55 yards, thence South 440 yards to the point of beginning.

The facts of this case are essentially undisputed.  The previous owner of the tract, F.G. Cherry, executed an oil, gas, and mineral lease in favor of NBM Properties ("the Cherry lease") on July 18, 1994.  Shortly thereafter, NBM Properties assigned its rights in the Cherry lease to T.M. Hopkins, Inc. and/or T.M. Hopkins Operating Company (collectively "Hopkins").  On December 31, 1998, plaintiff, Kim R. Smith Logging, Inc. ("KRSL"), purchased the property from F.G. Cherry.  However, F.G. Cherry retained its mineral interests.

Indigo Minerals, LLC/SWN Production (Louisiana), LLC[1] is the operator designated for certain wells unitized with the property for

---

[1] Indigo Minerals, LLC was one of the original defendants in these proceedings. Pursuant to a merger, the name of the company has been changed to SWN Production (Louisiana) LLC ("SWN").  SWN has been substituted as defendant in these proceedings. Therefore, any reference to Indigo, SWN, or Indigo/SWN shall mean SWN Production (Louisiana) LLC.

production of the Cotton Valley and Haynesville formations.  In 2018, Indigo drilled four cross-sectional Haynesville wells, which served as alternate unit wells for the HA RA SUB Unit.

In May 2019, Indigo/SWN retained the services of defendant, Valor Petroleum, LLC ("Valor"), a landman company, to acquire mineral leases in and around the Haynesville Shale area.  Thereafter, in August 2019, Hopkins assigned its rights in the Cherry lease to Valor.

In October 2019, Judy G. Britt, F.G. Cherry's successor, released any claim to the mineral servitude and waived any claim for unpaid mineral royalties pertaining to the tract.  At that time, Britt informed KRSL that Indigo had been paying royalties from the Cherry lease.

By letter dated November 1, 2019, KRSL advised Indigo of the act of release executed by Britt, and made a 30-day demand for the payment of all unpaid royalties owed under the terms of the Cherry lease.  By email dated December 2, 2019, counsel for Indigo notified KRSL of the receipt of the demand and stated she had "confirmed with Indigo that royalties are owed to your client on production in this Section and the FG Cherry lease referenced in [the demand]."  KRSL complied with Indigo's request for its tax identification number and W9 tax form.

On December 12, 2019, Valor assigned its rights under the Cherry lease to Indigo, reserving an overriding royalty interest in the lease. However, the agreement was made effective "as of the 1st day of August, 2019."  Subsequently, Indigo made the following payments to KRSL:

> January 31, 2020 -- $8,105.82
> February 28, 2020 -- $168,470.08
> March 31, 2020 -- $56,245.47

2

On January 14, 2021, plaintiff filed a lawsuit against Indigo, Valor, and Hopkins, asserting it was entitled to cancellation of the lease, damages, and attorney fees under La. R.S. 31:137. Plaintiff asserted based on information and belief, at the time of KRSL's demand on Indigo, Valor was the owner of the Cherry lease, and Indigo/SWN was the operator of the wells. Plaintiff further alleged Indigo was acting as an undisclosed agent for Hopkins and Valor. In the alternative, plaintiff alleged it was entitled to penalties under La. R.S. 31:140, due to Indigo/SWN's failure to timely pay royalties. Plaintiff prayed as follows:

(a) Judgment be rendered in its favor and against defendants, pursuant to La. R.S. 31:141, dissolving and canceling the portion of the Cherry Lease affecting the Property from the public records, plus awarding reasonable attorney's fees, and cost of these proceedings; or alternatively,

(b) Judgment be rendered in its favor and against defendants, *in solido*, for damages in the amount of the royalties that were untimely paid by Indigo after Plaintiff's 30-day Demand pursuant to La. R.S. 31:140, double the amount of unpaid royalties extending back to the date of first production, interest from the date due on said sums, reasonable attorney's fees, all costs of these proceedings; and

(c) For all such orders and decrees which are necessary for full, general, and equitable relief herein.

In response, Indigo/SWN filed a dilatory exception of prematurity and a peremptory exception of no cause of action. Indigo/SWN argued plaintiff's claims are premature because plaintiff failed to make a written demand on Valor, Hopkins, or any of its predecessors in title, pursuant to La. R.S. 31:137. In the alternative, Indigo/SWN argued plaintiff's petition failed to assert a valid cause of action against it because Hopkins was the lessee of record at the time the demand for payment of royalties was made.

Following a hearing, the district court sustained the exceptions of prematurity and no cause of action, dismissing plaintiff's claims.

Plaintiff appeals.

## DISCUSSION

Plaintiff contends the district court erred in sustaining the exceptions of no cause of action and prematurity. Plaintiff argues the evidence established Indigo/SWN owned the Cherry lease when the 30-day demand was made, and Indigo/SWN did not produce any evidence to establish it was not the lessee when the demand was made on November 5, 2019. Therefore, according to plaintiff, its petition stated a valid cause of action for nonpayment of lease royalties, and defendants failed to prove its demand was premature.

The exception of prematurity is a dilatory exception intended to retard the progress of the action, not to defeat it. La. C.C.P. arts. 923, 926. A lawsuit is premature if it is brought before the right to enforce the claim sued on has accrued. *Steed v. St. Paul's United Methodist Church*, 31,521 (La. App. 2 Cir. 2/24/99), 728 So. 2d 931, *writ denied*, 99-0877 (La. 5/7/99), 740 So. 2d 1290; *Clark v. City of Shreveport*, 26,638 (La. App. 2 Cir. 5/10/95), 655 So. 2d 617. The exception of prematurity raises the issue of whether the judicial cause of action has yet come into existence because some prerequisite condition has not been fulfilled. *Jones v. Hartford Ins. Co.*, 560 So. 2d 442 (La. 1990); *Steed*, *supra*. Appellate review of a ruling on an exception of prematurity is typically manifest error; however, when the ruling involves a question of law, it is reviewed *de novo*. *Larkin Dev. N., L.L.C. v. City of Shreveport*, 53,374 (La. App. 2 Cir. 3/4/20), 297 So. 3d 980, *writ denied*, 20-01026 (La. 12/22/20), 307 So. 3d 1039; *Bayou Orthotic*

4

*& Prosthetics Ctr., L.L.C. v. Morris Bart, L.L.C.*, 17-557 (La. App. 5 Cir. 3/28/18), 243 So. 3d 1276.

A mineral lessee has the obligation to make timely payment of royalties to the lessor. La. R.S. 31:123. The applicable law as to notice and demand for the payment of royalties is set forth in the Louisiana Mineral Code. La. R.S. 31:137 *et seq.* establishes the procedure to be followed by a mineral lessor seeking the proper payment of royalties. La. R.S. 31:137 provides, "If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."

Once the written notice has been given, the provisions of La. R.S. 31:138 become applicable. This provision affords the mineral lessee 30 days after receipt of the required notice within which to pay the royalties due or to respond, in writing, by stating a reasonable cause for nonpayment. Under La. R.S. 31:139, if the lessee pays the royalties demanded within 30 days after receipt of the lessor's written notice, the remedy of dissolution becomes unavailable to the lessor, unless the lessee fraudulently withheld payment. Pursuant to La. R.S. 31:140, if the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, regardless of the cause for the original failure to pay royalties. The court may, in its discretion, dissolve the lease.

The Official Comment to La. R.S. 31:137 states, in pertinent part:

5

***

It is the intent of [Mineral Code] Articles 137 [through] 141 to provide lessors with a meaningful remedy while simultaneously giving operators who have made substantial investments in producing properties the security of title which the nature and size of their investment deserves.

Article 137 contemplates that at any time there has been a nonpayment of royalties, the lessor must notify the lessee. It is not intended that this notice be a demand for performance as in the case of the traditional default under the Civil Code. The lessor may not desire performance. The device of notice, then, is merely to inform the lessee that he has not paid royalties deemed by the lessor to be due. Article 138 gives the lessee thirty days within which to respond to the notice either by paying or stating a reasonable cause for nonpayment. Payment or nonpayment or stating or failing to state a reasonable cause for nonpayment in response to the notice has consequences for lessor and lessee as to the remedies available, as provided in Articles 139 through 141.

***

Article 140 provides for the consequences of failure by the lessee to respond favorably to the notice required by Article 137. If the lessee fails to pay in response to the notice or to state a reasonable cause for nonpayment within the notice period and if the court finds royalties to be due, the court may award double damages, interest, and attorney's fees regardless of the cause for the original failure to pay, whether it be fraudulent, willful, with or without reasonable grounds, or arises from mere oversight or neglect.

***

In the instant case, the record contains a series of agreements between the parties. As stated above, in May 2019, Indigo/SWN and Valor entered into an agreement, whereby Valor would assist Indigo in acquiring mineral leases within the area of interest. Thereafter, by agreement dated August 12, 2019, Hopkins and Valor entered into an agreement, whereby Hopkins agreed to "grant, bargain, sell, convey, transfer and assign unto" Valor "all of its right, title, and interest in and to the oil, gas and mineral lease" in the Cherry lease. Hopkins reserved "an overriding royalty interest in the

6

minerals underlying the lands described therein." This agreement was made effective "as of the 1st day of August, 2019."

Subsequently, by agreement dated December 12, 2019, Valor entered into an agreement with Indigo, wherein Valor agreed to "grant, bargain, sell, convey, transfer and assign" unto Indigo "all of its right, title, and interest in and to the oil, gas and mineral leases" in multiple properties, including the Cherry lease. Valor reserved "an overriding royalty interest of the difference between 25% and existing lease burdens of record[.]" This agreement further stated as follows:

> IN WITNESS WHEREOF, this instrument executed as of this 12th day of December, 2019, but effective as of the lease date on each of the corresponding Leases contained on Exhibit "A," with the exception of that lease listed as lease no. 1 on the attached Exhibit "A," for which effective date shall be August 1, 2019.

The lease listed as "Lease No. 1" on Exhibit A was the F.G. Cherry lease. Thus, the record demonstrates the following: (1) Valor agreed to assist Indigo/SWN in acquiring leases; (2) Valor obtained the lease from Hopkins on behalf of Indigo/SWN; and (3) Valor, in turn, transferred its interests to Indigo/SWN, while retaining an overriding royalty interest. The agreements, transferring the rights from Hopkins to Valor, and then from Valor to Indigo/SWN, were made effective on the same date, August 1, 2019.[2] Consequently, although the agreement was not yet recorded, this record demonstrates Indigo/SWN became the sublessee of the Cherry lease effective August 1, 2019, and it remained as such when the demand for royalties was made.

---

[2] Notably, Valor never received any royalties or working interest revenues from the wells between August and December 2019.

7

Citing this Court's opinion in *Massey v. TXO Prod. Corp.*, 604 So. 2d 186 (La. App 2 Cir. 1992), Indigo/SWN maintains plaintiff's lawsuit was premature because notice was not given to Hopkins and Valor. In *Massey*, *supra*, Amoco assigned a partial interest in a mineral lease to TXO Production Corporation ("TXO"), which was designated the operator of a separate unit, the Parlor City Unit. Thereafter, TXO authorized the Fina group and the Arkla group to extract gas and natural gas from the unit. Prior to filing the lawsuit, the plaintiff sent a demand letter to TXO, the Fina group, and the Arkla group, demanding cancellation of the leases for nonpayment of royalties. The plaintiff did not send the demand to Amoco, the lessee. When the lawsuit was ultimately filed, Amoco was named as a defendant. Amoco filed an exception of prematurity, arguing plaintiff did not make the requisite written demand on it prior to filing the lawsuit, pursuant to Mineral Code article 137. In affirming the district court's ruling sustaining the exception of prematurity, this Court concluded notice to TXO and the two third parties (the Fina group and the Arkla group) did not constitute notice to Amoco. This Court stated:

> As to the Parlor City Unit, Amoco has indeed subleased its rights to TXO, which in turn assigned rights to the Fina group and the Arkla group, all of which received Massey's written notice in February 1990. Massey correctly points out that Amoco's sublease agreement provides that TXO "hereby assumes and agrees to perform to the full extent that subleases remain a burden on the leased acreage." However, the plain meaning of art. 132[3] is that if a sublease is properly recorded and notice thereof is given to the lessor, the lessor may not give

[3] La. R.S. 31:132 provides:

An assignee or sublessee is bound by any notice or demand by the lessor on the lessee unless the lessor has been given written notice of the assignment or sublease and the assignment or sublease has been filed for registry. If filing and notice have taken place, any subsequent notice or demand by the lessor must be made on the assignee or sublessee.

art. 137 notice of cancellation to the original lessee only. Notice of cancellation must be given to the sublessees as well**, *to affect them*.** The article neither provides nor implies that in the event of a properly recorded and "noticed" sublease, the lessor may omit notice of cancellation to the original lessee. This conclusion would be inconsistent with the general theory of art. 132 to give notice of cancellation to all concerned parties.

*Id*. at 188 (Emphasis added).

In the instant case, it is undisputed KRSL did not send the demand to Hopkins and Valor. Pursuant to this Court's decision in *Massey*, the notice of cancellation would have to had been sent to Hopkins and Valor *to affect them*. However, Indigo/SWN, not Hopkins and Valor, is objecting to the improper notice. The law is clear, to the extent of the interest acquired, an assignee or sublessee becomes responsible directly to the original lessor for performance of the lessee's obligations. La. R.S. 31:128. As stated above, Indigo/SWN became a sublessee effective August 1, 2019, and as a sublessee, Indigo/SWN is responsible directly to plaintiff for performance of its obligations, to the extent of the interest acquired effective August 1, 2019. Consequently, we find the notice to Indigo/SWN was sufficient notice that there had been a nonpayment of royalties by Indigo/SWN. Accordingly, we find the district court erred in sustaining the dilatory exception of prematurity.

The exception of no cause of action is a peremptory exception intended to test the legal sufficiency of the petition. La. C.C.P. art. 927; *Roberts v. Sewerage & Water Bd. of New Orleans,* 92-2048 (La. 3/21/94), 634 So. 2d 341; *Steed*, *supra*. It is tried only on the face of the pleadings; generally, it must be overruled unless the allegations in the petition exclude every reasonable hypothesis other than the premise on

9

which the defense is based, *i.e.*, unless the plaintiff has no cause of action under *any* evidence admissible under the pleadings. *Id*. All well-pleaded allegations of fact are accepted as true and correct, and all doubts are resolved in favor of sufficiency of the petition so as to afford litigants their day in court. *Lowther v. Town of Bastrop*, 20-01231 (La. 5/3/21), 320 So. 3d 369; *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876. The burden of demonstrating that a petition fails to state a cause of action is upon the mover. *Emigh v. West Calcasieu Cameron Hosp*., 13-2985 (La. 7/1/14), 145 So. 3d 369; *Fink v. Bryant*, 01-0987 (La. 11/8/01), 801 So. 2d 346. Because it presents questions of law, the sustaining of an exception of no cause of action is subject to de novo review. *Lowther*, *supra*; *Jackson*, *supra*.

Herein, in its petition, plaintiff alleged as follows: (1) the previous lessor of the Cherry lease had been receiving royalty payments from Indigo; (2) it had made a demand for all unpaid royalties under the terms of the Cherry lease to Indigo; (3) counsel for Indigo had "confirmed with Indigo that royalties are owed . . . on production in this Section and the F.G. Cherry lease"; (4) Indigo made "eventual and untimely" payments of the unpaid royalties in January, February, and March 2020; (5) Indigo acted as an undisclosed agent for Hopkins and Valor for the operations of the units and the payment of royalties for the Cherry lease; (6) Hopkins assigned their rights under the Cherry lease to Valor, and Valor assigned the Cherry lease to Indigo; (7) Indigo knew of plaintiff's ownership of the property and its entitlement to the royalties; and (8) Indigo never paid royalties owed under the Cherry lease.

We find plaintiff's petition alleges facts sufficient to state a cause of action against Indigo/SWN. Despite Indigo/SWN's assertions to the contrary, the documents presented in the record established Indigo/SWN entered into an agreement, pursuant to which Indigo/SWN retained Valor to acquire mineral leases within the area of interest. Once Valor acquired the Cherry lease from Hopkins, soon thereafter, it assigned its interest in the lease to Indigo/SWN. The record demonstrates Indigo/SWN was a sublessee at the time the demand was made, and it was responsible for performance for the obligations of the lessee. Further, through counsel, Indigo/SWN acknowledged "royalties are owed to your client" in November 2019. Nevertheless, Indigo/SWN did not begin making royalty payments to plaintiff until January 31, 2020. Consequently, we reverse the district court ruling sustaining the exception of no cause of action.

## CONCLUSION

For the reasons set forth herein, the judgment of the trial court sustaining the dilatory exception of prematurity and the peremptory exception of no cause of action is hereby reversed. We remand this matter to the district court for further proceedings. Costs of the appeal are assessed to appellee, SWN Production (Louisiana), LLC.

**REVERSED; REMANDED.**