DOUCET, Judge.
Both sides appeal this judgment for personal injuries arising out of an automobile accident which occurred on June 30, 1987, in Alexandria, Louisiana. The plaintiffs’ vehicle was struck from behind by an Alexandria city bus. The City of Alexandria (City) admitted liability. One of the plaintiffs, Mrs. Clothilde Lair, is dissatisfied with the amount of the awards. On this appeal she wants more. She was awarded $75,000 in general damages for pain, suffering, inconvenience and distress; $137,-000 for loss of earnings present and future; and special damages in the amount of $27,-360.83. The City likewise questions all awards. On this appeal it wants reductions.
The first issue before us on appeal is the amount of the general damage award. This, in turn, depends on whether most of Mrs. Lair’s physical complaints are attributable to this accident. The second issue is whether the trial court erred as to the amount awarded the plaintiff for past and future lost wages. The third issue is mainly whether a portion of the medical bills was properly disallowed.
MEDICAL TESTIMONY
Dr. Stuart Phillips performed surgery on Mrs. Lair. He diagnosed her as suffering from an internal derangement of the lumbar disc. He did a lumbar fusion. His testimony indicated a relationship between the accident and the necessity for the surgery. The fact that she had this operation, and its effects, constitute the main basis for her claimed entitlement to additional damages.
Other medical testimony was not so favorable regarding the relationship between Mrs. Lair’s accident and her medical problems. Following the accident, the plaintiff was examined in the emergency room and was found to have no broken bones. She was given a prescription for pain medication and referred to Dr. Donovan Perdue, an orthopedic surgeon. Approximately one week after the accident, she had her visit with Dr. Perdue. He performed an orthopedic and neurological examination. He took x rays and found no evidence of trauma such as a fracture, subluxation or dislocation. The x rays of the lower back or lumbar spine were normal. On her fourth and final visit to him, Dr. Perdue found the plaintiff's condition to be slightly improved. He believed, and so informed her, that her job was not physically demanding and was a relatively sedentary type of job to which she should return. He also informed the plaintiff that a return to work would be beneficial and that her symptoms were not disabling.
Dr. Perdue testified that his four examinations revealed soft tissue injuries with no indication of disc involvement at any level. He also testified that after a review of plaintiff’s medical records he found no condition which would have required surgery. It was the opinion of Dr. Perdue that plaintiff had a mild degenerative disc and he did not think the degeneration was caused by the accident. He also said that any degenerative changes she experienced at the L-5/S-l level resulted from an aging process that had been going on for several years.
Plaintiff next saw Dr. John Patton, a neurosurgeon, who testified that his examination revealed no trauma or injury to the plaintiff’s back which could have given rise to her complaints of pain. He also testified that, in the case of a patient who was given tests identical to those undergone by plaintiff, and who had findings identical to hers, he would not suggest surgery.
GENERAL DAMAGE AWARD
It is obvious from the ruling of the trial judge that he gave more weight to the opinion of Mrs. Lair’s treating physician than to that of the other two non-treating physicians concerning the relationship between the accident and her disability. Taking all testimony into consideration, including the lay witnesses, the trial judge concluded that the plaintiff’s injuries were partly attributable to the accident. He in *553 terpreted the medical evidence as showing that the degenerative disc was a result of the aging process. Because he found aggravation of her problems resulting from the accident, necessitating surgery and increasing her pain and disability for a period of time, he awarded her $75,000 in general damages.
It is distinctly within the province of the trial court to assess the credibility of expert witnesses and the weight to assign to their testimony. State of Louisiana, DOTD v. Regard, 567 So.2d 1174 (La.App. 3d Cir.1990). An appellate court will not disturb the trial court’s evaluation of expert testimony and the conclusions drawn therefrom in the absence of manifest error. Id. We can find no manifest error here. The award, based on these findings, is neither excessive nor insufficient.
LOST WAGES AWARD
Both sides complain of this award. Mrs. Lair was employed at South Central Bell Telephone Company before the accident. She had not worked during most of the period since her accident, and was unemployed at the time of trial. The trial court’s award of $137,000 for past and future lost wages was not explained in the reasons for judgment, but it is apparent that most of the award was for future lost wages. It is also apparent that the trial court did not think she could go back to work.
We find clear error in the award for future loss of wages. Mrs. Lair’s own physician, Dr. Phillips, testified that she could return to work by June 1989, and that she could perform the executive, clerical work for South Central Bell that she was doing before her accident. This was the opinion of all other doctors testifying in the case as well. This testimony establishes plaintiff’s future earning capacity. Turner v. Safeco Insurance Company of America, 472 So.2d 43 (La.App. 1st Cir.1985).
It is the plaintiff’s burden to prove lost wages, if not precisely, at least with reasonable certainty. Thomas v. State Farm Insurance Company, 499 So.2d 562 (La.App. 2d Cir.1986), writs denied 501 So.2d 213, 215 (La.1987). Mrs. Lair failed to prove future lost wages in the amount found by the trial court. The evidence establishes that she is capable of returning to her former job. Moreover, the testimony of the City’s economic expert witnesses suggested a high likelihood, considering South Central Bell’s hiring and rehiring practices, that she could, if she wished, go back to work for her former employer.
Mrs. Lair was off work one and one-half years before she was released to return to work. If another half year is added, to allow her time to regain employment and regain her pre-accident earning level, with fringe benefits, our calculation of her lost earnings is $57,000. We reduce the trial court award from $137,000 to $57,000.
MEDICAL EXPENSES AWARD
The plaintiff’s third and last assignment of error concerns the reduction of medical bills by the trial judge. The trial judge, on his own, reduced three medical bills by a total of $2,969.60. The reasons for these reductions, as stated in his reasons for judgment, was that “... these bills are simply exorbitant, and somebody has to do something somewhere at some time in order to turn the tide of ever increasing medical charges.”
Exorbitance of the medical charges was never raised nor discussed during the trial on the merits. It is our opinion that the trial judge should not have reduced recovery for these medical bills. Even if a tort victim has been overcharged for medical treatment, the tortfeasor is liable for the expenses unless they were incurred by the victim in bad faith. Temple v. Shannon, 505 So.2d 798 (La.App. 2d Cir.1987); Dequeant v. Dobbins, 334 So.2d 555 (La.App. 4th Cir.1976); Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608 (La.App. 4th Cir.1972).
We increase this award by the amount of $2,969.60. This will restore the special damage award to the amount stipulated as the total of special damages, $30,330.43.
Although the City stipulated that Mrs. Lair incurred these expenses, it contends as its third assignment of error that her *554 surgery was unnecessary for treatment of any injury related to the accident and caused by the City. We have already discussed generally the causation finding of the trial judge under the general damage assignment above, and for those same reasons, we will not disturb the trial court’s award of special damages.
For the foregoing reasons the judgment is amended to increase the special award from $27,360.83 to $30,330.43. The judgment is further amended to decrease the lost wages award from $137,000 to $57,000. In all other respects we affirm the judgment of the district court. The costs of this appeal are assessed half to the plaintiffs and half to the defendants.
AFFIRMED AS AMENDED.