IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 17, 2008

Charles R. Fulbruge III
Clerk

No. 07-30284

JOSEPH R MICIOTTO

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA; NATIONAL RAILROAD PASSENGER
CORPORATION, also known as Amtrak; CANADIAN NATIONAL/ILLINOIS
CENTRAL RAILROAD COMPANY

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:02-CV-1485

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Joseph R. Miciotto appeals from the district court's determination of his
damages in a suit brought pursuant to the Federal Tort Claims Act (FTCA).
Miciotto argues that the district court misapplied the Louisiana collateral source
rule in connection with medical expenses paid by Miciotto's employer and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

incorrectly determined the amount of his lost wages. We MODIFY the district court's judgment as to the lost wages award and AFFIRM AS MODIFIED.

Miciotto was injured when the train on which he was the engineer collided with a National Guard truck stalled at a railroad crossing. He suffered a shoulder injury and underwent two surgeries. He did not work from August 2000 to April 2004. Miciotto filed suit against the United States of America; his employer, Amtrak; and the owner of the railroad track. The United States was determined to be 100% liable for the accident. In a cross-claim against the United States, Amtrak was granted summary judgment for reimbursement of the medical expenses it paid on Miciotto's behalf. Miciotto's medical bills totaled approximately $87,000, but Amtrak negotiated a reduced amount and paid approximately $52,000. Following a bench trial to determine Miciotto's damages, the district court determined that Miciotto was not entitled to an award for medical expenses. The court awarded Miciotto $147,000 in lost wages. Because it determined that Miciotto failed to mitigate his damages during gaps in his treatment between his two surgeries, the court omitted lost wages for the gap periods.

We review a district court's factual determinations, including damages amounts, in an FTCA case for clear error. Dickerson ex rel. Dickerson v. United States, 280 F.3d 470, 474 (5th Cir. 2002). We will find clear error only if we have a definite and firm conviction that a mistake has been committed. Id.

Miciotto argues first that the district court misapplied the Louisiana collateral source rule by not including medical expenses in his damages. He contends that in addition to reimbursing Amtrak for the expenses paid on his behalf, the United States should have paid him the difference between the amount of the medical bills and the amount that Amtrak negotiated and actually paid, or approximately $35,000. The collateral source rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be

diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." Rogers v. Graves, 959 So.2d 990, 993 (La. Ct. App. 2007). For the rule to apply to "write-off" amounts of medical expenses that were billed but not paid because a third-party negotiated a lesser amount, the plaintiff must give some consideration for the benefit obtained or otherwise suffer a diminution of patrimony. See Bozeman v. State, 879 So.2d 692, 705–06 (La. 2004) (holding with respect to Medicaid "write-offs" that plaintiff could not recover the difference between the amount of medical expenses billed and the amount actually paid by Medicaid because Medicaid is a free service for which plaintiff had provided no consideration).

Here, we understand the district court to have found Miciotto gave no consideration in return for the medical benefits. We conclude that Miciotto failed to show consideration provided for the payment of his medical expenses, and the district court did not err by denying him the amount above Amtrak's payment of the medical bills.

We also agree with the district court that the collateral source rule is inapplicable in Louisiana when the employer intervenes in an action for reimbursement and that Amtrak's cross-claim was essentially an intervention. See Lee v. Cook, 482 So.2d 760, 763–64 (La. Ct. App. 1986).

Miciotto next challenges the district court's lost wages award. He contends that the district court incorrectly found a failure to mitigate damages during gaps in his medical treatment because, he asserts, he was following his doctor's conservative treatment plan. He also contends that because the parties stipulated to his annual earnings the court incorrectly calculated his lost wages for the time that it found he could not work and was undergoing medical treatment.

A plaintiff has the duty to exercise reasonable diligence and ordinary care to mitigate his damages. Jacobs v. New Orleans Pub. Serv., Inc., 432 So.2d 843,

845 (La. 1983). Mitigation of damages includes the duty to find suitable employment if the plaintiff is employable. Maranto v. Goodyear Tire & Rubber Co., 661 So.2d 503, 509 (La. Ct. App. 1995). The district court had evidence before it that Miciotto had been released to light duty work during the gap periods and that there was alternative work available to Miciotto. There was also testimony from Miciotto's treating physician that the doctor would expect a symptomatic person to have sought additional treatment much sooner. Furthermore, there was evidence from a treating psychiatrist that Miciotto's psychological problems would be permanent and preclude re-employment as an engineer, which suggests that Miciotto should have sought other work. An independent medical exam by another psychiatrist found that Miciotto was not precluded from returning to work but that Miciotto was not motivated to do so. Based on the record as a whole, we cannot conclude that the district court clearly erred by denying lost wages during the gap periods because Miciotto should have either found other work or pursued more consistent medical treatment.

We reach a different conclusion with respect to the amount of lost wages calculated for the non-gap period. We start by recognizing that pretrial stipulations on damages are generally binding "and should be strictly enforced." Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 985 (5th Cir. 1989). We find from the parties' stipulations of Miciotto's annual earnings that the district court incorrectly calculated the lost wages.

The district court found that the gap in Miciotto's treatment began on December 3, 2001, and ended in July 2003 and that the lost wages award should compensate Miciotto for the time that he received active treatment. We agree with Miciotto that the court's finding necessarily means he was entitled to lost wages at least from the date of the accident on August 5, 2000, to December 3, 2001, and from August 1, 2003, to April 19, 2004, when he was released back to work after the second surgery. The parties stipulated that the amount of wages

for 2000 was $31,222 and for 2004 it was $36,164. They also stipulated to what Miciotto's annual earnings would have been for all of 2001 and 2003. Because the gaps in Miciotto's treatment occurred from 2001 to 2003, Miciotto is entitled only to a partial award for lost wages in those years. Based on the stipulated amount of Miciotto's earnings, we conclude that the lost wages award should have been $183,485.[1] This amount is more than the district court's award of $147,000.

The United States asserted during oral argument that the district court's calculation may have reflected a belief that there were other periods when Miciotto could have returned to work because of a release to light duty. The district court did not explain how it arrived at its calculation, however, and the Government's speculation is not supported by the district court's order. The court determined that the lost wages award was meant to compensate Miciotto for the time that he was not working and was receiving active medical treatment, which it determined was from August 5, 2000, to December 3, 2001, and from August 1, 2003, to April 19, 2004. We conclude, therefore, that the district court's lost wages award is erroneous, and we modify the judgment to reflect a lost wages award of $183,485. See Ferrero v. United States, 603 F.2d 510, 515 (5th Cir. 1979) (noting that circuit court may recompute a damages award "if a remand would be mere wasted motion").

The district court's judgment is AFFIRMED AS MODIFIED.

---

[1] We determine this amount by converting the stipulated annual earnings for 2001 and 2003 to a daily rate, multiplying that rate by the number of days that Miciotto received treatment in those years, and adding the stipulated earnings for 2000 and 2001. For 2001 the parties stipulated Miciotto's annual wages would have been $86,250, which is approximately $236 per day. From January 1, 2001, to December 3, 2001, is 337 days, which multiplied by $236 per day results in a loss of $79,532. The stipulation for earnings in 2003 was $87,353 per year, which is approximately $239 per day. From August 1, 2003, to December 31, 2003, is 153 days, which multiplied by $239 results in lost wages of $36,567. The parties' stipulations show that Miciotto's lost wages for the time that the district court found he was unable to work and was actively receiving medical treatment should have been $31,222 (2000) + $79,532 (2001) + $36,567 (2003) + $36,164 (2004), or $183,485.