MARCO OCHOA

VERSUS

BRAD ALDRETE, ALDRETE & SONS
SHORING CO., INC. AND STATE FARM
MUTUAL AUTOMOBILE INSURANCE
COMPANY

NO. 21-C-632

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 793-366, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

December 08, 2021

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and John J. Molaison, Jr.

**<u>WRIT GRANTED</u>**

    **FHW**
    **JGG**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/RELATOR,
MARCO OCHOA
 Miguel A. Elias
 Paula J. Ferreira
 Adam M. Klock
 Mario D. Zavala, Jr.
 Graham Brian
 Donald A. Mau
 Olivia L. Kinnear
 Rashim J. Khan
 Robert E. Duhon

COUNSEL FOR DEFENDANT/RESPONDENT,
BRAD ALDRETE, ALDRETE & SONS SHORING CO., INC. AND STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
 Nicholas C. Gristina
 Andrew G. West
 Gordon P. Guthrie, III

**WICKER, J.**,

Relator-plaintiff, Marco Ochoa, seeks review of the district court's August 10, 2021 judgment in favor of Respondents-defendants, Brad Aldrete, Aldrete & Sons Shoring Co., Inc., and State Farm Mutual Automobile Ins. Co. The district court granted Respondents' Motion in Limine to exclude the total medical expenses billed by Relator's medical providers and to limit Relator to only offering at trial evidence of the medical expenses paid to his healthcare providers by the third-party funding/factoring company, HMR Funding, LLC (hereinafter "HMRF"). For the foregoing reasons, we grant the writ, vacate the August 10, 2021 judgment, and remand this matter for further proceedings.

### Pertinent Factual and Procedural History

On June 28, 2018, Mr. Ochoa was involved in a motor vehicle accident with Brad Aldrete. Mr. Ochoa had limited financial resources to cover the costs of his medical treatment for his alleged accident-related injuries. Prior to filing suit, his medical providers, One Spine Institute - Dr. Peter Liechty; Crescent View Surgery Center; and Louisiana Rehab Products, Inc., entered into an agreement with a third-party medical funding/factoring company, HMR Funding, LLC, for it to purchase Mr. Ochoa's outstanding medical bills at a negotiated or discounted rate in exchange for an assignment to collect the billed amount of the medical expenses from Mr. Ochoa and the proceeds of the resolution of his claim. To obtain Mr. Ochoa's consent to that agreement, a representative for each medical provider, One Spine Institute - Dr. Peter Liechty; Crescent View; and Louisiana Rehab Products, Inc., entered into an Assignment Agreement[1] with Mr. Ochoa detailing, *inter alia*, his personal responsibility to each provider and the providers' assignment of its rights to HMRF. No representative from HMRF signed the agreement.

---

[1] The Assignment Agreements were executed on October 19, 2018 by Mr. Ochoa and a representative of One Spine Institute - Dr. Peter Liechty and Crescent View Surgery Center, respectively. On November 7, 2018, Mr. Ochoa and a representative of Louisiana Rehab Products, Inc. executed an Assignment Agreement.

On March 21, 2019, Mr. Ochoa filed suit against Brad Aldrete, Aldrete & Sons Shoring Co., Inc., and State Farm Mutual Automobile Ins. Co. for damages and injuries sustained in connection with the June 28, 2018 automobile accident.

On June 29, 2021, Respondents filed a Motion in Limine seeking to exclude evidence as to the billed amount of medical specials and to limit Relator to only presenting the actual amounts paid to his medical providers. In connection with their motion, Respondents attached the Lien and Receivables Purchase and Assignment Agreements between HMRF and One Spine Institute - Dr. Peter Liechty; Crescent View; and Louisiana Rehab Products, Inc.[2] Also submitted were the Master Purchase Agreement between Benchmark Rehabilitation Partners, LLC and HMRF[3]; the 1442 deposition transcript of Deborah Lukhard, a corporate representative of HMRF; three Assignment Agreements executed by Relator and his medical providers, One Spine Institute - Dr. Peter Liechty; Crescent View; and Louisiana Rehab Products, Inc., respectively.

In their motion, Respondents argued that HMRF purchased the account receivables from Mr. Ochoa's medical providers at a significantly discounted rate, cumulatively less than 42% of the billed amounts, in satisfaction of the medical bills, and thus, Mr. Ochoa is not responsible to pay any amount over that which was paid by the third-party financing company, HMRF. Ultimately, Respondents asserted that the collateral source rule is inapplicable to this matter.

On July 13, 2021, Mr. Ochoa filed an Opposition to Respondents' motion. He averred that HMRF's involvement with his medical providers should be excluded on the grounds that the collateral source rule and La. C.E. art. 409 prohibits the admissibility of such information at trial. Mr. Ochoa relies on *Whitley v. Pinnacle*

---

[2] The Assignment Agreements between HMRF and Mr. Ochoa's medical providers were not attached to the writ application or in the opposition thereto. Because we are limited to our review of the documents attached to the writ application, we are unable to review and opine as to agreements absent from the writ application.

[3] The Master Purchase Agreement between HMRF and Benchmark Rehab was not attached to the writ application or in the opposition thereto. Thus, we are unable to review and opine as to the agreement absent from the application since we are limited to review of the documents included with the writ.

2

*Entm't, Inc. of Delaware,* CV 15-00595-BAJ-RLB, 2017 WL 1051188 (M.D. La. Mar. 20, 2017), to support his position that there is no windfall or double recovery by him, and that the billed amount for his medical expenses are costs he will actually incur. Later that same day, Respondents filed a Reply to Mr. Ochoa's opposition wherein they re-urged that the collateral source rule does not apply, that *Hoffman*[4] and *Bozeman*[5] are controlling, and that Mr. Ochoa never entered into an agreement with HMRF or negotiated with his medical providers regarding a discounted payment to satisfy the billed amount of his medical bills.

At the July 22, 2021 hearing, after considering the arguments of the parties and the evidence introduced, the district court took the matter under advisement. On August 10, 2021, the district court rendered judgment, with written reasons[6], in favor of Respondents and against Mr. Ochoa. Mr. Ochoa seeks supervisory review.

**Law and Analysis**

The trial court is granted broad discretion in its evidentiary rulings, which are not to be disturbed on appeal absent a clear abuse of discretion. *Moonan v. Louisiana Med. Mut. Ins. Co.*, 16-113 (La. App. 5 Cir. 9/22/16); 202 So.3d 529, 534, *writ denied*, 16-2048 (La. 1/9/17); 214 So.3d 869 (internal citations omitted). A motion in limine presents an evidentiary matter that is subject to the great discretion of the trial court. *Id*. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error prejudiced the plaintiff's case, otherwise a reversal is not warranted. La. C.E. art. 103(A). *Id*. The determination is whether the

---

[4] *Hoffman v. 21st Century North American Ins. Co.*, 14-2279 (La. 10/2/15), 209 So.3d 702.
[5] *Bozeman v. State*, 03-1016 (La. 7/2/04), 879 So.2d 692, 697.
[6] In the district court's August 11, 2021 reasons for judgment, a discussion of Respondents First Motion in Limine filed on July 24, 2020 has been contained therein. The issues presented and the ruling of the district court made in connection with that motion are not before this Court, and have not been considered upon review of the matter before us.

3

error, when compared to the record in its totality, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. *Id.*

The central issue before this Court is whether the collateral source rule applies to the difference between the amounts billed by Mr. Ochoa's medical providers and the discounted amounts paid by HMRF, a third-party medical funding/factoring company, to those providers in satisfaction of receivables when Mr. Ochoa remains liable for the billed amount.

We first address if, pursuant to the Assignment Agreements, Mr. Ochoa is liable for the remaining balance of the billed invoices after HMRF acquired, by paying a negotiated or discounted amount of the medical invoices, the account receivables from the medical providers.

As preliminary matter, we address the nature of the contracts between the medical providers and Mr. Ochoa, and its bearing on HMRF.

Assignments of right are governed by La. C.C.P. art. 698, which provides:

> An incorporeal right which has been assigned, whether unconditionally or conditionally for purposes of collection or security, shall be enforced judicially by:
> (1) The assignor and the assignee, when the assignment is partial; or
> (2) The assignee, when the entire right is assigned.

A cause of action in tort is both an incorporeal movable thing and property that is owned under Louisiana law. See La. C.C. arts. 448, 461, and 473; *Heyse v. Fidelity & Casualty Co. of New York*, 255 La. 127, 229 So.2d 724, 726 (La. 1969); *Conrad v. Swiss Chalet Picnic Grounds & Catering Service*, 96–606 (La. App. 5 Cir. 12/30/96), 686 So.2d 1055. No particular form or words are necessary to constitute a valid assignment. *Katz v. Saruessen*, 476 So.2d 16, 19 (La. App. 5 Cir. 1985).

Further, all rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. La. C.C. art. 2642. Strictly personal obligations on the part of an obligee are those for which the performance is intended for the

4

benefit of the obligee exclusively. La. C.C. art. 1766. It is well settled that most litigious rights can be assigned, transferred, or inherited and are therefore not strictly personal. La. C.C. art. 2652; *Guidry v. Theriot*, 377 So.2d 319, 324 (La. 1979) (victim's action for recovery of tort damages is not strictly personal).

Upon review of the documents attached to the writ application, the Assignment Agreements executed by Mr. Ochoa and by the medical providers, One Spine Institute - Dr. Peter Liechty, Crescent View, and Louisiana Rehab Products, Inc., respectively, contain identical language and provisions. The pertinent sections of the Assignment Agreements are as follows:

> **1. <u>Assignment Of Proceeds And Acknowledgment of Lien</u>**. Patient hereby irrevocably assigns, transfers, and conveys to Medical Provider, and its assigns, all right, title and interest in and to any proceeds recovered by Patient, or on Patient's behalf, arising out of any claim, settlement, mediation, litigation, arbitration, verdict, judgment, or other collection activity related to the Incident, regardless of the source of such proceeds (collectively, the "Proceeds"), in the Expense Amount. Patient acknowledges and agrees that, notwithstanding the existence of this Agreement, Patient remains directly responsible for all medical expenses arising out of the Services provided by Medical Provider to Patient, and the parties' entering into this Agreement does not constitute a waiver by Medical Provider of any right to collect the Expense Amount from Patient. This Agreement does not make Medical Provider's ability to collect the Expense Amount, or Patient's responsibility to pay the Expense Amount, contingent on the receipt of the Proceeds or on Patient's prevailing on the claims arising out of the Incident. This assignment is in addition to and does not negate the lien Medical Provider, or its assigns, has on the Proceeds, and the parties acknowledge the existence and enforceability of such lien.

> **6. <u>Medical Providers' Intent To Assign Rights</u>**. Patient acknowledges that Medical Provider intends to assign its rights under this agreement to HMR Funding, LLC, a Delaware limited liability company, or its affiliates (collectively, "HMRF"). Patient agrees that such assignment is permitted under this Agreement. Patient agrees that upon such assignment, all obligations Patient owes under this agreement, including without limitation the obligation to pay the Proceeds, shall be obligations owed to HMRF and that HMRF shall have all rights of Medical Provider under this Agreement, including without

5

limitation the right to collect the Proceeds, remedies upon
Patient's breach, and any right to indemnification.

Based on the language of the agreements, clearly One Spine Institute - Dr. Peter Liechty, Crescent View Surgery Center, and Louisiana Rehab Products each intended to assign its rights to HMRF to collect the Medical Lien and the remaining balance of the billed amount for medical treatment received by Mr. Ochoa in connection with the June 29, 2018 accident. Specifically, One Spine Institute - Dr. Peter Liechty, Crescent View Surgery Center, and Louisiana Rehab Products expressly and explicitly stated that Mr. Ochoa (the Patient) consents to "all obligations Patient owes under this agreement, including without limitation the obligation to pay the Proceeds, shall be obligations owed to HMRF and that HMRF shall have all rights of Medical Provider under this Agreement, including without limitation the right to collect the Proceeds, remedies upon Patient's breach, and any right to indemnification." These words fully and unequivocally lead to the conclusion that One Spine Institute - Dr. Peter Liechty, Crescent View Surgery Center, and Louisiana Rehab Products assigned all of its rights to HMRF when a representative of each provider along with Mr. Ochoa signed the agreements. We find that One Spine Institute - Dr. Peter Liechty, Crescent View Surgery View, and Louisiana Rehab Products rights were not strictly personal and therefore assignable.

We now address whether the Assignment Agreements contained any provisions such that HMRF could hold Mr. Ochoa liable for the full amount of the billed medical invoices for treatment rendered by the medical providers.

The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. For purposes of interpreting a contract, a contract is "ambiguous" when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used. *Lomark, Inc. v. LavigneBaker Petroleum, L.L.C.*, 12-389 (La. App. 5 Cir. 2/21/13); 110 So.3d 1107,

6

*writ denied*, 13-0654 (La. 4/26/13); 112 So.3d 848 (internal citations omitted). The common intent of the parties to a contract is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Id.* (internal citations omitted). Although parol evidence is inadmissible to vary the terms of a written contract, when the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties. *Id.* (internal citations omitted).

In their opposition, Respondents make substantively and substantially the same arguments they made before the trial court in their motion at issue. Respondents contend that Mr. Ochoa's medical providers were fully compensated when HMRF purchased the account receivables at a significantly discounted rate of 42%, that is $120,250.00, when the outstanding bills totaled $286,070.50 – a difference of $165,820.50. In its written reasons for judgment, the district court gave significant consideration to the testimony of Deborah Lukhard, a corporate representative of HMRF, who testified in a 1442 deposition that it has not "gone personally after any of the patients for failure to pay the full medical expense."

It is well established that "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046; *Perfection Metal & Supply Co. v. Indep. Supply of N.O. Inc.*, 97-800 (La. App. 5 Cir. 1/14/98); 707 So.2d 86 (internal citations omitted). Testimonial or other evidence may not be admitted to negate or vary the contents of an act under private signature, although evidence may be admissible in the interest of justice to prove vices of content or subsequent oral modifications of a contract. La. C.C. art. 1848; *Id.* (internal citations omitted).

7

Consideration of this evidence by the district court was improper to confirm not if the right exists, but if HMRF actually exercises its right to litigate claims against injured plaintiffs to recoup the unpaid difference between the amount HMRF paid for the receivables and the amount billed by the medical providers. On its face, the provisions and terms of the Assignment Agreements are unambiguous regarding Mr. Ochoa's responsibility to pay the total amount billed by his medical providers. Thus, we find that pursuant to the language and provisions contained in the Assignment Agreements executed by Mr. Ochoa and his medical providers, Mr. Ochoa remains liable to HMRF for the full amount of the billed medical invoices for treatment received in connection with the June 28, 2018 accident.

Next, we address whether the collateral source rule applies to the difference between the amount billed by Mr. Ochoa's medical providers and the discounted amount paid by HMRF.

Louisiana courts embrace and apply the collateral source rule, which is a rule of evidence and damages. *Bozeman v. State*, 03-1016 (La. 7/2/04), 879 So.2d 692, 697. Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Id.* at 698. Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance. *Id.*

In *Bozeman*, our Supreme Court explained that where a plaintiff's "patrimony has been diminished in some way" to obtain collateral source payments, such as with private insurance or Medicare, then a plaintiff is entitled to the benefit of the bargain and may recover the full value of the medical services, including the "write-off" amount. *Id.* at 705–06. However, a plaintiff may not recover "write-off" amounts as

damages where no consideration is provided by the plaintiff for the benefit. *Id*. at 705. Thus, there are two primary considerations for determining whether the collateral source rule applies: "(1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his or her patrimony because of the availability of the benefit, such that no actual windfall or double recovery would result from application of the rule." *Lockett v. UV Ins. Risk Retention Grp., Inc*., 15-166 (La. App. 5 Cir. 11/19/15), 180 So. 3d 557, 570; citing *Bellard v. Am. Cent. Ins. Co*., 980 So. 2d 654, 669 (La. 2008).

In *Hoffman v. 21st Century North American Ins. Co*., our Supreme Court declined to apply the collateral source rule to an attorney-negotiated medical discount. 14-2279 (La. 10/2/15), 209 So.3d 702. In *Simmons v. Cornerstone Investments, LLC*, the Supreme Court reasoned that "allowing the plaintiff to recover an amount for which he has not paid, and for which he has no obligation to pay, is at cross purposes with the basic principles of tort recovery in our Civil Code." 18-0735 (La. 5/8/19); 282 So.3d 199, 205. Ultimately, it held that the collateral source rule does not apply to a discount in the amount of medical expenses paid by workers' compensation because "any recovery in addition to the reduced amount of medical bills would be a windfall to Plaintiff and against the rationale behind the collateral source rule." *Id*. In other words, for the collateral source rule to apply to 'write-off' amounts of medical expenses that were billed but not paid because a third-party negotiated to pay a lesser amount, the plaintiff must give some consideration for the benefit obtained or otherwise suffer a diminution of patrimony." *Miciotto v. United States*, 270 Fed. Appx. 301, 303 (5th Cir. 2008) (per curiam) (citing *Bozeman*, 879 So. 2d at 705–06).

9

In the case at bar, the agreement between HMRF and One Spine Institute - Dr. Peter Liechty, Crescent View Surgical Center, and Louisiana Rehab Products, respectively, provides no discount to Mr. Ochoa. Further, Mr. Ochoa did not negotiate any of the discounted amounts or sign a contract with HMRF. Respondents admit this undisputed fact in their opposition to the writ application. Rather, the medical providers assigned to HMRF the right to recover the full amount billed to Mr. Ochoa, and he remains personally liable for the full amount billed. Mr. Ochoa's attorney has not negotiated a discount of the total amounts owed by him, which must be passed on to the tortfeasor under *Hoffman*. In his writ application, Mr. Ochoa contends that the total amounts billed is the appropriate measure of damages, despite HMRF's purchase of the receivables at a discounted rate, which represents HMRF's profit, because he is still required to pay the full costs of his medical expenses. Respondents argue that the instant matter is similar to *Hoffman* because Mr. Ochoa will not be responsible for the full amount of the medical bills. In support of their contention, they submitted the 1442 deposition transcript of Ms. Lukhard, a corporate representative of HMRF, who testified that HMRF has not pursued any injured patients for failure to pay the full amount billed by the medical provider.

As previously discussed, parol evidence is inadmissible to vary the terms of a written contract. Moreover, any discounts or write-offs obtained through negotiations by a health insurer, *Patterson v. State Farm Mut. Automobile Ins. Co.*, 244 So. 3d 800, 803-04 (La. App. 2 Cir. 2017), or a plaintiff individually, *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 180 So. 3d 557, 571-71 (La. App. 5 Cir. 2015), are subject to the collateral source rule, and therefore are not deducted from plaintiff's recoverable medical expenses.

In *Whitley*, a federal magistrate court held that the exception to the collateral source doctrine did not apply and denied a motion in limine to exclude evidence of total amount billed for medical treatment, noting that "while [the funding company]

10

received a discount upfront, at most, this difference between the customary cost—which plaintiff has to pay in full—and the discounted rate consists of the profit [the funding company] receives for agreeing to finance the medical costs up-front." *Whitley v. Pinnacle Entm't, Inc. of Delaware*, 2017 WL 1051188 (M.D. La. Mar. 20, 2017). It reasoned that plaintiff is entitled to present evidence of the total costs she is actually obligated to pay, which, under the terms of the operative financing agreements, are the full billed costs. *Id.*

In the present case, just like the plaintiff in *Whitley*, Mr. Ochoa is responsible for the full amounts billed by his medical providers pursuant to the Assignment Agreements, and thus, he is entitled to present evidence of the total costs he is obligated to pay. Accordingly, Respondents have failed to prove that Mr. Ochoa is not liable for the amounts billed by his medical providers. Since Mr. Ochoa has not actually received a benefit from the discount negotiated between the third-party funding company and the healthcare providers, Respondents cannot subtract that discount from a theoretical damage award to Mr. Ochoa. Respondents may not introduce evidence regarding this financial arrangement to argue that Mr. Ochoa's recovery in this litigation should be limited to the discounted rate paid by HMRF to Mr. Ochoa's healthcare providers.

Next, we address whether Mr. Ochoa was in bad faith relative to the customary and reasonableness of his medical expenses such that a diminution in his bills was appropriate. In its written reasons for judgment, the district court reasoned that because Mr. Ochoa acknowledged in the Assignment Agreements that the billed amounts may differ from other patients who were not funded by a third-party entity, the healthcare provider may receive a larger percentage of the amounts billed. The district court explained that it considered an affidavit and report furnished by Nancy Michalski, a registered nurse in California, who reviewed the medical bills of Mr. Ochoa's three medical providers.

11

Louisiana courts routinely state that the trier of fact commits reversible error if it finds that the plaintiff has incurred past medical expenses because of the defendant's negligence, but then does not award the plaintiff the full amount of those expenses. *Gunn v. Robertson*, 01-347 (La. App. 5 Cir. 11/14/01); 801 So.2d 555, 564, *writ denied*, 02-0170 (La. 3/22/02); 811 So.2d 942, and *writ denied*, 02-0176 (La. 3/22/02); 811 So.2d 942. In *Gunn*, this Court explained that a "tortfeasor is required to pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith." *Id*. This Court also stated that a "trier of fact is in error for failing to award the full amount of medical expenses" when proved by a preponderance of the evidence. *Id*.

A jury could only reduce plaintiff's award for past medical expenses if it found that not all of his injuries were caused by defendant's negligence or that he incurred unnecessary treatment in bad faith. *Simon v. Lacoste*, 05-550 (La. App. 3 Cir. 12/30/05), 918 So.2d 1102, 1104-05. Bad faith exists where plaintiffs continue treatment, despite having already been healed, for the sole purpose of increasing their damages. *Bass v. Allstate Ins. Co*., 32,652 (La. App. 2 Cir. 1/26/00), 750 So.2d 460. Similarly, a plaintiff's deliberate exaggeration of the impact of a vehicle collision and the extent any alleged injuries may constitute "bad faith." *Hamilton v. Wild*, 40,410 (La. App. 2 Cir. 12/14/05), 917 So.2d 695. On the other hand, courts will not find bad faith on the part of a plaintiff simply because the trier of fact disagrees with a course of treatment. *Vines v. Wood*, 34,555 (La. App. 2 Cir. 4/4/01), 785 So.2d 126, 131.

Upon review of the documents attached to the writ application, we point out that neither the affidavit nor the report furnished by Nancy Michalski is contained in the attachments of the writ application and in the opposition thereto. Nevertheless, this Court will address the merits of Respondents' contention since neither document

has any direct bearing on their assertions. Ultimately, Respondents apparently do not object to the treatment received by Mr. Ochoa, but they dispute the costs of his treatment.

Simply put, no such evidence of bad faith exists in this instant writ application. Instead, Respondents aver that Mr. Ochoa was overcharged for treatment and procedures performed at One Spine Institute - Dr. Peter Liechty and Crescent View Surgery View. They further asserted that HMRF did not perform any investigation to determine if the medical expenses billed are reasonable. Also, the district court, in its written reasons for judgment, stated that Mr. Ochoa was in bad faith for accepting treatment that may be billed at a different rate than billed for patients who were not funded by a third-party entity.

We disagree. There is no evidence that Mr. Ochoa acted in bad faith by continuing treatment, despite having already been healed, for the sole purpose of increasing his damages. Respondents have not submitted any proof that Mr. Ochoa has deliberately exaggerated the impact of the June 28, 2018 accident and the extent of his alleged injuries in connection with same. Further, the testimony of Nancy Michalski alone is insufficient to meet the standard set forth by Louisiana jurisprudence regarding a plaintiff's bad faith relative to the customary and reasonableness of his medical expenses. Louisiana law is clear that "[e]ven if a tort victim has been overcharged for medical treatment, the tortfeasor is liable for the expenses unless they were incurred by the victim in bad faith." *Lair v. Carriker*, 574 So.2d 551, 553 (La. App. 3d Cir. 1991) (internal citations omitted). Accordingly, whether a treating physician overcharged a plaintiff for medical service is not within the jury's purview. See La. C.C. arts. 2315, 2315.6, 2316, and 2317.

Lastly, we address Respondents' arguments regarding La. R.S. 22:1874[7] and La. C.C. art. 2652. While Respondents did raise the applicability of La. R.S. 22:1874

---

[7] La. R.S. 22:1874 provides, in pertinent part, as follows:

13

and La. C.C. art. 2652 in support of their motion in the district court below, the district court did not address those arguments and the judgment makes no mention of same. As a general rule, appellate courts will not consider issues that were not addressed by the trial court. *Stone v. Lakes of Chateau N., L.L.C.*, 16-529 (La. App. 5 Cir. 12/14/16); 208 So.3d 1053, *writ denied*, 2017-0087 (La. 2/24/17). In its reasons for judgment, the district court merely referenced the applicability of La C.C. art. 2652 relative to HMRF's right to recovery in connection with Mr. Ochoa's medical providers' assignment. Once the court made its findings regarding the issues presented in the motion, any additional statements in its reasons for judgment discussing whether defendants could prevail under certain theories of law were not essential to the judgment. Thus, the court's comments on these issues are purely obiter dicta, and are not binding on the parties. We further point out that La C.C. art. 2652 permits the debtor to extinguish an obligation when the litigious right is assigned, but it has no application to transfers of rights before a suit is filed; it neither authorizes nor prohibits such transfers, but is silent on the subject. *King v. Illinois Nat. Ins. Co.*, 43,237 (La. App. 2 Cir. 6/4/08); 986 So.2d 839, *writ granted*, 08-1491 (La. 10/10/08); 993 So.2d 1271, and aff'd, 08-1491 (La. 4/3/09); 9 So.3d 780. Here,

A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.

(2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.

(3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subsection.

* * *

B. No contracted health care provider may maintain any action at law against an enrollee or insured for a health insurance issuer liability or for payment of any amount in excess of the contracted reimbursement rate for such services. In the event of such an action, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorney fees and court costs. However, nothing in this Subsection shall be construed to prohibit a contracted health care provider from maintaining any action at law against an enrollee or insured after a health insurance issuer determines that the health insurance issuer is not liable for the health care services rendered.

14

the Assignment Agreements were executed on October 19, 2018 and November 7, 2018, but suit was not filed until March 21, 2019, which was well after the agreements had been executed. Thus, Louisiana's litigious redemption statute is inapplicable in the instant matter.

Regarding La. R.S. 22:1874, the Balance Billing Act, it prohibits a health care provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate, a practice referred to as "balance billing." *Leet v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 18-1148 (La. App. 1 Cir. 2/28/19); 274 So.3d 583, 588. An insured has an implied right of action under the Balance Billing Act grounded in individual restitution where a health care provider collects or attempts to collect amounts from the insured patient in excess of the contracted reimbursement rate. *Id*; citing *Anderson v. Ochsner Health System*, 13-2970 (La. 7/1/14), 172 So.3d 579, 583-585. Moreover, where a health care provider asserts a lien pursuant to La. R.S. 9:47523 for the full amount of undiscounted charges, that practice constitutes "an action at law" prohibited by La. R.S. 22:1874(B), thus entitling the insured injured person to a private right of action under the express language of La. R.S. 22:1874(B). *Id*; citing *Anderson*, 172 So.3d at 585.

We reject Respondents' argument that La. R.S. 22:1874 is applicable under the facts present in this matter, and find their reasoning and characterization of the Balance Billing Act is misplaced. The act was designed to protect an insured injured party who was enrolled with and paid premiums to a health insurance issuer, who contracted with health care providers for discounted rates for medical treatment. In *Emigh*, the Louisiana Supreme Court addressed the existence of a cause of action by an insured against her insurer for a contracted provider's failure to bill her the negotiated group discounts for health care costs. *Emigh v. West Calcasieu Cameron Hosp.*, 13-2985 (La. 7/1/14), 145 So. 3d 369, 374-75. The Supreme Court found that

the object of the contract between an insured and her insurer is not only to pay covered medical bills, but also to secure reduced health care costs and tender payment for those negotiated, discounted costs. *Id.*

In the present case, a health insurance insurer has not been involved in this litigation. Moreover, HMRF is not a health insurance insurer that Mr. Ouchoa has made payments to or insured by for his medical treatment. Mr. Ouchoa has not presented any health insurance to pay for the medical treatment he has received at One Spine Institute - Dr. Peter Liechty, Crescent View Surgical Center, and Louisiana Rehab Products. Thus, we find that Respondents argument lacks merit.

In their opposition to the writ application, Respondents aver that they are entitled to challenge Dr. Liechty's credibility and opinion at trial by introducing into the record his agreements with HMRF. As a general rule, appellate courts will not consider issues raised for the first time on appeal, which are not pleaded in the court below and which the trial court has not addressed. *Stone v. Lakes of Chateau N., L.L.C.*, 16-529 (La. App. 5 Cir. 12/14/16); 208 So.3d 1053, *writ denied*, 2017-0087 (La. 2/24/17). This issue is not before this Court since Respondents did not brief this issue in their Motion in Limine, and thus, we decline to address it.

For the reasons discussed herein, we grant this writ application and set aside the district court's judgment in favor of Brad Aldrete, Aldrete & Sons Shoring Co., Inc., and State Farm Mutual Automobile Ins. Co. We hold that (1) pursuant to the language and provisions contained in the Assignment Agreements executed by Mr. Ochoa and his medical providers, Mr. Ochoa remains liable to HMRF for the full amount of the billed medical invoices for treatment received in connection with the June 28, 2018 accident; (2) Mr. Ochoa is entitled to present evidence of the total medical costs he is obligated to pay; (3) Brad Aldrete, Aldrete & Sons Shoring Co., Inc., and State Farm Mutual Automobile Ins. Co. may not introduce evidence regarding the financial arrangement to argue that Mr. Ochoa's recovery in this

16

litigation should be limited to the discounted rate paid by HMRF; and (4) Mr. Ochoa's medical expenses may not be reduced since there is no evidence that he acted in bad faith. We further remand this matter for further proceedings consistent with this opinion.

**WRIT GRANTED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 8, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-C-632**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
DONALD A. MAU (RELATOR)          MARIO D. ZAVALA, JR. (RELATOR)          MIGUEL A. ELIAS (RELATOR)
ANDREW G. WEST (RESPONDENT)      NICHOLAS C. GRISTINA (RESPONDENT)

### MAILED
ADAM M. KLOCK (RELATOR)               GORDON P. GUTHRIE, III (RESPONDENT)
GRAHAM BRIAN (RELATOR)                ATTORNEY AT LAW
OLIVIA L. KINNEAR (RELATOR)           704 CARONDELET STREET
PAULA J. FERREIRA (RELATOR)           NEW ORLEANS, LA 70130
RASHIM J. KHAN (RELATOR)
ROBERT E. DUHON (RELATOR)
ATTORNEYS AT LAW
4224 WILLIAMS BOULEVARD
KENNER, LA 70065